UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MEREDITH O'NEIL, JESSICA SVEDINE, DEANNA CORBY, NICK ROCCO, JENNA ROCCO, and ROBERTO SILVA,<br><br>    Plaintiffs,<br><br>v.<br><br>CANTON POLICE DEPARTMENT, the TOWN OF CANTON, MASSACHUSETTS, HELENA RAFFERTY, as Chief of the Canton Police Department and in her personal capacity, and OFFICER ROBERT ZEPF, OFFICER MICHAEL CHIN, OFFICER ANTHONY PASCARELLI, and SERGEANT JOSEPH SILVASY, in their official and individual capacities,<br><br>    Defendants. | Civil Action No. 1:23-cv-12685-DJC<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND FOR A PRELIMINARY INJUNCTION**<br><br>**[ORAL ARGUMENT REQUESTED]** |

## 1.0   INTRODUCTION

This case is about a Police Chief and her subordinates abusing their power and threating Plaintiffs with prosecution for their protest of an injustice. Plaintiffs believe that the Commonwealth of Massachusetts is wrongly framing Karen Read for the alleged murder of John O'Keefe based on a cover-up by crooked police officers. They were threatened with prosecution pursuant to Mass. Gen. Laws, ch. 268, § 13A, during their November 5, 2023, protest. The journalist who brought initial scrutiny to the prosecution of Read has been charged under the related statute of Mass. Gen. Laws, ch. 268, § 13B. Plaintiffs reasonably fear that, if they proceed with their planned November 12, 2023, protest, and other similar such protests, Defendants will arrest and prosecute them for violation of Sections 13A and/or 13B, despite such protests being protected under the First Amendment to the U.S. Constitution. They request a temporary

restraining order to permit a planned November 12, 2023, protest and other future protests to proceed, until such time as the Court can hear and determine their request for a preliminary injunction.

Plaintiffs are not threatening any witness or related person and will not do so. They will not engage in the "blocking, impeding, inhibiting, or in any other manner obstructing or interfering with access to, ingress into and egress from any building or parking lot of the" business they plan to protest. *Compare Madsen v. Women's Health Ctr.*, 512 U.S. 753 (1994) (upholding such restrictions on protest activities near abortion clinics). Plaintiffs simply wish to engage in constitutionally-protected speech and require this Court's intervention.

## 2.0  FACTUAL BACKGROUND

Plaintiffs Meredith O'Neil, Jessica Svedine, Deanna Corby, Nick Rocco, Jenna Rocco, and Roberto Silva are Massachusetts residents who believe that Karen Read is being framed. Verified Complaint (ECF No. 1) at ¶ 1. They have protested peacefully and wish to continue to do so. *Id.*

John O'Keefe was a member of the Boston Police Department who, at the time of his death, lived in Canton, Massachusetts. *Id.* at ¶ 10.[1] Karen Read was romantically involved with O'Keefe prior to his death. *Id.* at ¶ 11. On Friday, January 28, 2022, O'Keefe and Read were at the Waterfall Bar & Grille, in Canton, Massachusetts, and had drinks there with Chris Albert (a Town of Canton Selectman), Brian Albert (a Boston police officer and Chris Albert's brother), and Jennifer McCabe (Brian Albert's sister-in-law). *Id.* at ¶ 12. When the bar was closing, Brian Albert invited O'Keefe, Read, and his relations back to his house, and O'Keefe and Read drove to Brian Albert's

---

[1] The background on the O'Keefe death and Read prosecution are provided for context purposes relative to Plaintiffs' protests and, as noted in the Verified Complaint, are drawn from the September 27, 2023, article in Boston Magazine by Gretchen Voss, entitled "The Karen Read Case in Canton: The Killing that Tore a Town Apart" (ECF No. 1 at ¶ 9, citing ECF No. 1-1). Plaintiffs do not have personal knowledge as to these events.

house. *Id.* at ¶ 13. The following morning, on January 29, 2022, Read, McCabe, and O'Keefe's friend, Kerry Roberts, found O'Keefe in the snow outside Brian Albert's house. *Id.* at ¶ 14. O'Keefe was pronounced dead by physicians at Good Samaritan Medical Center in Brockton, Massachusetts, later that morning. *Id.* at ¶ 15. Read was, thereafter, charged with manslaughter, having allegedly hit O'Keefe with her automobile. *Id.* at ¶ 16.

Subsequent to her arrest, Read's lawyer was given a tip that Brian Albert and his nephew, Colin Albert (who had an acrimonious relationship with O'Keefe), had beaten up O'Keefe that night, to the point of unconsciousness, and that Brian Albert and Brian Higgins (a special agent with the federal Bureau of Alcohol, Tobacco, Firearms and Explosives), who had been at Brian Albert's house, dumped O'Keefe's body on Brian Albert's lawn. *Id.* at ¶ 17. Read thereafter learned that State Trooper Michael Proctor, a Canton resident and lead detective into the investigation of O'Keefe's death, was apparently a friend to the Albert family—Colin Albert, for example, had been the ring bearer at Proctor's sister's wedding. *Id.* at ¶ 18. As a result, Read believed that, to protect the Alberts, Proctor framed Read for O'Keefe's death. *Id.* at ¶ 19. However, Proctor, on June 9, 2022, arrested Read again, following a grand jury indictment against Read for second-degree murder.[2] *Id.* at ¶ 20.

On April 12, 2023, Read's defense team filed a 92-page affidavit in her case outlining their theory of how Read had been framed. *Id.* at ¶ 21. Six days later, on April 18, 2023, journalist Aidan Kearney, published his first article about the alleged framing of Read.[3] *Id.* at ¶ 22. Kearney's reporting brought public support to Read, and public demonstrations in support of her

---

[2] The prosecution is pending in the Norfolk County Superior Court, styled *Commonwealth v. Karen Read,* Docket No. 2282CR0117.
[3] https://tbdailynews.com/corrupt-state-trooper-helps-boston-cop-coverup-murder-of-fellow-officer-frame-innocent-girlfriend/

- 3 -

Memorandum of Law in Support of Plaintiffs' Emergency Motion for a Temporary
Restraining Order and for a Preliminary Injunction

followed. *Id.* at ¶ 23.  There is widespread public interest in the prosecution of Read—*Dateline* has been filing Read for a show and Netflix and others have approached Kearney relative to a documentary. *Id.* at ¶ 24.

At an August 8, 2023, meeting of the Canton Select Board, residents voiced their concerns about Selectman Chris Albert and the Canton Police Department *vis a vis* the O'Keefe death. *Id.* at ¶ 25.  During that Meeting, Defendant Helena Rafferty, Chief of the Canton Police Department,[4] referred to an event:

> "that made residents of our community feel disrespected, targeted, and intimidated, an event that I believe, under statute 268 13A could most possibly be deemed a criminal act. Additionally, we have an elected library trustee who, as of noon today, was still listed as a co-administrator on a social site that is allowing residents of our community to also be disrespected and dehumanized within innuendos, outright falsehoods, half-truths, and bullying comments, comments, I might add, that if it were made in a school environment, would and should have every resident in this town in an uproar.  Yesterday, I received an email from a concerned citizen related to the, and I quote, 'horrendous, threatening posts' on this site, asking me to address the issue, as she is worried about how it might-may incite people to act moving forward.  Let me make one thing as crystal clear as possible to-as I continue with my comments to the residents:  I embrace the fact that we live in a country where people can have different viewpoints.  I respect everyone's right to voice those viewpoints under the First Amendment.  I can appreciate that some people have questions on the O'Keefe case, based on the limited information they have seen thus far.  However, what I cannot accept is witnesses, let me repeat that, witnesses—these are residents who have not been charged with any crimes—being bullied in their homes, at their children's games, or on vacation, all under the guise of the First Amendment.  This is a really slippery slope that, if allowed to continue, will cause a rapid decline in the amount of people who would ever step forward to be a witness in a case and, quite possibly, the slow erosion of the criminal justice system."[5]

---

[4] Defendant Canton Police Department ("CPD") is a police department established pursuant to Mass. Gen. Laws, ch. 41, § 97, is located in Canton, Massachusetts, and is a political subdivision of the Defendant Town of Canton, Massachusetts.  ECF No. 1 at ¶ 2.  To the extent CPD is not capable of being sued, the Town of Canton is named as a Defendant, and they should be treated as a single entity.
[5] https://cantonmaselectboard.podbean.com/e/select-board-of-august-9-2023/, beginning at approximately 18:00.

Memorandum of Law in Support of Plaintiffs' Emergency Motion for a Temporary
Restraining Order and for a Preliminary Injunction

*Id.* at ¶ 26. Two months later, on October 11, 2023, Kearney was charged with six counts of intimidation under Mass. Gen. Laws, ch. 268, § 13B, and one count of conspiracy to do so. *See Commonwealth v. Aiden Kearney*, Docket Nos. 2355CR001150, 2355CR001151, 2355CR001152, 2355CR001154, 2355CR001155, 2355CR001156, and 2355CR001157, in the Stoughton District Court.

To protest against what appears to be perjury to them, Plaintiffs and other members of the public gathered on Sunday, November 5, 2023, across the street from Chris Albert's business, D&E Pizza. ECF No. 1. at ¶ 29; *see also* Chris Albert Campaign Site, "Chris Albert 2023 Select Board Campaign", available at https://chrisalbert2023sb.com/ (last accessed Nov. 8, 2023)("I have been the proud owner of D&E Pizza in downtown Canton for the past 24 years.") At that protest, Plaintiffs held signs that had inoffensive slogans like "Free Karen Reed" and "Justice." ECF No. 1 at ¶ 30. Defendants Officers Robert Zepf, Michael Chin, and Anthony Pascarelli, and Sgt. Joseph Silvasy, members of the Canton Police Department, drove by the protest several times, attempting to intimidate the protesters into leaving. *Id.* at ¶ 31. These Defendants are supervised by Defendant Rafferty and necessarily act at her direction. *Id.* at ¶ 33. Such intimidation is consistent with Rafferty's August 8, 2023, policy that the Defendant Canton Police Department "cannot accept" those engaged in First Amendment-protected activities vis a vis witnesses in the Read prosecution. *Id.* at ¶ 32.

When Defendants' intimidation tactic proved unsuccessful, Officers Robert Zepf, Michael Chin, and Anthony Pascarelli, and Sgt. Joseph Silvasy stopped and informed the protesters that they were not permitted to protest there, because if the protest could be seen by Chris Albert, they would deem it to be "witness intimidation" and Plaintiffs would be arrested. *Id.* at ¶ 34. The officers specifically handed Plaintiffs a copy of Mass. Gen. Laws, ch. 268, § 13A, they statute

under which they threatened Plaintiffs. *Id.* at ¶ 35. Defendants have an open investigation into Plaintiffs' November 5, 2023, protest, meaning they still face potential unlawful arrest and prosecution. *See* ECF No. 1-2 (Email from Deputy Chief Patricia Sherrill to Jenna Rocco, Nov. 7, 2023).

The threat of arrest by Defendants for further protest is credible—Aiden Kearney has already been arrested and charged under the related witness intimidation statute, Mass. Gen. Laws, ch. 268, § 13B. *Id.* at ¶ 37. Defendants' threat of arrest placed Plaintiffs in fear for their safety and liberty. *Id.* at ¶ 38. As a result of Defendants' threat of arrest, Plaintiffs have chilled their speech and determined to not move forward with a November 12, 2023, planned protest in support of Read and other similar such protests. *Id.* at ¶¶ 39-40.

## 3.0    LEGAL STANDARD

Rule 65 of the Federal Rules of Civil Procedure provides for temporary restraining orders and preliminary injunctions in federal courts upon notice to the adverse party. *See* Fed. R. Civ. P. 65(a) and (b). A temporary restraining order or preliminary injunction must (1) state the reasons why it issued; (2) state its specific terms; and (3) describe in reasonable detail the act or acts restrained or required. Fed. R. Civ. P. 65(d). Injunctive relief should be issued if: (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm if the injunction did not issue; (3) the balance of equities tips in plaintiff's favor; and (4) the injunction is in the public interest. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).

"In the First Amendment context, the likelihood of success on the merits is the linchpin of the preliminary injunction analysis." *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 10 (1st Cir. 2012) (*per curiam*). At this stage, the "court need not conclusively determine the merits of the movant's claim; it is enough for the court simply to evaluate the likelihood . . .

- 6 -

Memorandum of Law in Support of Plaintiffs' Emergency Motion for a Temporary Restraining Order and for a Preliminary Injunction

that the movant ultimately will prevail on the merits." *Ryan v. U.S. Immigr. & Customs Enf't*, 974 F.3d 9, 18 (1st Cir. 2020).

## 4.0 LEGAL ARGUMENT

### 4.1 Plaintiffs have Standing

In First Amendment cases, there is standing when the plaintiff intends to engage in a Constitutionally protected activity, which has been proscribed by the government, and there is a credible threat of prosecution. *Mangual v. Rotger-Sabat*, 317 F.3d 45, 56-57 (1st Cir. 2003) (standing when a plaintiff "is chilled from exercising her right to free expression or forgoes expression in order to avoid enforcement consequences").

The harm is readily apparent. Defendants have threatened Plaintiffs with prosecution under Mass. Gen. Laws, ch. 268, § 13A, if they protest at D&E Pizza. Journalist Aidan Kearney is already being prosecuted under the related statute, Mass. Gen. Laws, ch. 268, § 13B, arising from the reporting on the seeming framing of Karen Read, the very thing Plaintiffs are protesting.

Massachusetts General Laws, chapter 268, section 13A (hereinafter "Section 13A") states, in relevant part:

> Whoever, with the intent of interfering with, obstructing, or impeding the administration of justice, or with the intent of influencing any … witness…, in the discharge of his duty, pickets or parades … in or near a building or residence occupied or used by such …witness, … shall be punished by a fine of not more than five thousand dollars or by imprisonment for not more than one year, or both.

Plaintiffs want Chris Albert to testify truthfully, rather than be complicit in the framing of Karen Read. Section 13A, presumably, is intended to ensure witnesses are not coerced into lying, though Plaintiffs seek the exact opposite—the truth. However, they potentially face arrest and prosecution under Section 13A for "influencing" Albert, a prospective witness, if their protest is deemed a "picket" and is considered to be "near" a building used by Albert.

Memorandum of Law in Support of Plaintiffs' Emergency Motion for a Temporary Restraining Order and for a Preliminary Injunction

Similarly, Massachusetts General Laws, chapter 268, section 13B(b) (hereinafter "Section 13B") states, in relevant part:

> Whoever willfully, either directly or indirectly: …(iii) misleads, intimidates or harasses another person who is a: (A) witness or potential witness … with the intent to or with reckless disregard for the fact that it may; (1) impede, obstruct, delay, prevent or otherwise interfere with: … a trial or other criminal proceeding of any type … shall be punished by imprisonment in the state prison for not more than 10 years or by imprisonment in the house of correction for not more than 21/2 years or by a fine of not less than $1,000 or more than $5,000 or by both such fine and imprisonment. If the proceeding in which the misconduct is directed at is the investigation or prosecution of a crime punishable by life imprisonment or the parole of a person convicted of a crime punishable by life imprisonment, such person shall be punished by imprisonment in the state prison for not more than 20 years or by imprisonment in the house of corrections for not more than 21/2 years or by a fine of not more than $10,000 or by both such fine and imprisonment.

Again, though they have no intent to mislead, intimidate, or harass Albert, or interfere with a criminal proceeding, Defendants seem disinterested in the truth and would rather suborn seeming perjury by Albert and others. Thus, it is likely, as with the Kearney prosecution, they would broadly and wrongly invoke Section 13B, charging Plaintiffs thereunder, should they engage in further planned protests. Thus, Plaintiffs have standing.

### 4.2 Plaintiffs are Likely to Prevail on the Merits of Their Claims

Plaintiffs bring two counts in their Verified Complaint: 1) for retaliation under 42 U.S.C. § 1983, on account of the direct threat to prosecute Plaintiffs under Section 13A, thereby chilling their speech; and 2) for declaratory and injunctive relief under 42 U.S.C. § 1983 and the First Amendment that Sections 13A and 13B are facially unconstitutional, void for vagueness, and unconstitutional as applied. For purposes of this motion, without prejudice, Plaintiffs do not seek a finding that the statutes are facially unconstitutional or void for vagueness, as such would unduly complicate the immediate and necessary relief sought. It is sufficient that they are likely to prevail on Count I and/or on their as-applied challenge under Count II.

### 4.2.1   Plaintiffs' First Amendment Rights Were Violated

Defendants violated Plaintiffs' constitutional rights by threatening them with prosecution under Section 13A for their speech protected under the First Amendment of the U.S. Constitution. Because Section 13A infringes on Plaintiffs' First Amendment rights, Defendants must justify their actions. *Comcast of Maine/New Hampshire, Inc. v. Mills*, 435 F. Supp. 228, 233 (D. Me. 2019) (citing *Reilly v. City of Harrisburg*, 858 F.3d 173, 180 (3d Cir. 2017))*; see also Tinker v. Des Moines Indep. Cmty. Sch. Dist.,* 393 U.S. 503, 509 (1969) ("In order for the State . . . to justify prohibition of a particular expression of opinion, it must be able to show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint."). They cannot.

Plaintiffs' November 5, 2023, protest was First Amendment-protected. *See Grayned v. City of Rockford*, 408 U.S. 104, 116 (1972) ("Subject to such reasonable regulation, however, peaceful demonstrations in public places are protected by the First Amendment.")  Demonstrating is protected by the First Amendment. *See Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 152 (1969) (describing privilege of citizens to assemble, parade, and discuss public questions in streets and parks). The sidewalk is a traditional public forum. *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 817 (1985). Plaintiffs recognize that the government may impose "reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions 'are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) *quoting Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984).  However, Defendants are retaliating against Plaintiffs and imposing a restriction on the place of Plaintiffs'

demonstration *with direct reference to the content of their speech*. Defendants would not have threatened Plaintiffs if their signs said "Pineapple Doesn't Belong on Pizza" or "Vote for Chris Albert".

In retaliation for Plaintiffs' First Amendment-protected statements, Defendants abused their position and threatened Plaintiffs with prosecution under Section 13A (and their actions against Kearney threaten them under Section 13B). "The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws abridging the freedom of speech." *Mass. Coal. For the Homeless v. City of Fall River*, 486 Mass. 437, 440 (2020) (*quoting Reed v. Gilbert*, 576 U.S. 155, 163 (2015)) (quotation marks omitted).

Defendants do not contend Plaintiffs' speech falls within one of the few "historic and traditional categories of expression long familiar to the bar" for which content-based restrictions on speech are clearly permitted. *United States v. Alvarez*, 567 U.S. 709, 717-18 (2012) (cleaned up). In *Commonwealth v. Welch*, 44 Mass. 80 (2005), the Massachusetts criminal harassment statute, Mass. Gen. Laws, ch. 265, § 43A, was determined to be constitutional only because it was narrowly construed to only encompass constitutionally-unprotected speech. Similarly, in *O'Brien v. Borowski*, 461 Mass. 451 (2012), the civil harassment statute, Mass. Gen. Laws, ch. 258E, was construed to only apply to unprotected speech of fighting words and true threats. In contrast, Defendants are not restricting their explicit and implicit threats under Sections 13A or 13B solely to unprotected speech.

Content-based regulations are subject to strict scrutiny, which requires the government to demonstrate "a compelling interest and . . . narrow[] tailor[ing] to achieve that interest." *Reed,* 576 U.S. at 155 (*quoting Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011)). Narrow tailoring in the strict scrutiny context requires the restriction to be "the least

- 10 -

Memorandum of Law in Support of Plaintiffs' Emergency Motion for a Temporary Restraining Order and for a Preliminary Injunction

restrictive means among available, effective alternatives." *Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656, 666 (2004). Defendants' actions fail strict scrutiny.

There is no compelling interest in restricting a citizen, let alone Plaintiffs, from protesting a pizza parlor owned by a Selectman, who is believed to be perjuring himself. While the Supreme Court has upheld a similar statute relating to picketing or parading near courthouses, it has not approved of such a statute *vis a vis* any building at all in which a witness may be found. *Contrast Cox v. Louisiana*, 379 U.S. 559 (1965). This is especially where Plaintiffs have and will restrict themselves from engaging in the "blocking, impeding, inhibiting, or in any other manner obstructing or interfering with access to, ingress into and egress from any building or parking lot of the" business they plan to protest. *Compare Madsen v. Women's Health Ctr.*, 512 U.S. 753 (1994) (upholding such restrictions on protest activities near abortion clinics). "Singing . . . whistling, shouting, [and] yelling" are forms of speech protected by the First Amendment. *Id.* at 772. Listening to citizens seeking redress of grievances is part of a public official's job. Defendants' threats are, therefore, unconstitutional.

Section 13A is unconstitutional as applied. Defendants have been purposely targeting people, like Plaintiffs, who speak in favor of Karen Read, and there is nothing that suggests they would threaten anyone siding with the prosecution. Section 13B is unconstitutional, as applied to Plaintiffs, as they would be singled out because of the viewpoint and content of their speech. Had they protested against Karen Read, which is consistent with Chris Albert's expected testimony, rather than in her favor, they would have no fear of arrest or prosecution under Section 13B.

Plaintiffs have not done anything that would arise to "serious evil" that justifies the restrictions imposed by Defendants. *See United States v. Treasury Employees*, 513 U.S. 454, 475 (1995). It is incumbent on Defendants to justify their conduct. *United States v. Playboy Ent. Grp.,*

- 11 -

Memorandum of Law in Support of Plaintiffs' Emergency Motion for a Temporary Restraining Order and for a Preliminary Injunction

*Inc.*, 529 U.S. 803, 816 (2000) ("When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions."). Defendants have no reasonable justification for their actions—they, like Plaintiffs, should be interested in seeing justice done and not suborning perjury. Defendants' content and viewpoint discriminatory conduct is unconstitutional and the threatened enforcement of Section 13A, and Section 13B by implication, must be enjoined.

### 4.2.2   The Government's Actions Constitute a Prior Restraint

Defendants have instituted a *de facto* ban that indefinitely bars them from protesting against Albert's apparent perjury. Our Constitution rarely, if ever, tolerates a prior restraint. "Prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 530, 559 (1976). "The Supreme Court has roundly rejected prior restraint." *Kinney v. Barnes*, 443 S.W.3d 87, 91 n.7 (Tex. 2014) (citing Sobchak, W., *The Big Lebowski*, 1998). Prior restraints "bear a heavy presumption against [their] constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963); *In re Providence Journal Co.*, 820 F.2d 1342, 1348 (1st Cir. 1986) (same).

The threatened enforcement of Section 13A, and Section 13B by implication, is a prior restraint. Defendants' justification lacks constitutional validity. Defendants do not like Plaintiffs criticizing the framing of Karen Read to someone who could help right that wrong. Thus, the prior restraint must be enjoined.

### 4.3   There is Irreparable Injury and the Injury Will Continue if Not Enjoined

The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). When a plaintiff seeks injunctive relief for "an alleged violation of First Amendment rights, a plaintiff's irreparable harm

- 12 -

Memorandum of Law in Support of Plaintiffs' Emergency Motion for a Temporary
Restraining Order and for a Preliminary Injunction

is inseparably linked to the likelihood of success on the merits of plaintiff's First Amendment claim." *WV Assn'n of Club Owners and Fraternal Srvs., Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009). Thus, if the plaintiff demonstrates a likelihood of success on the merits of its First Amendment claim, they necessarily also establish irreparable harm. *Fortuño, 699 F.3d at 15*.

Defendants deprived Plaintiffs of their First Amendment rights by threatening them with prosecution under Section 13A if they resume their protest at D&E Pizza. They are now chilling their speech, resulting in irreparable harm.

### 4.4 The Balance of Equities Tips in Plaintiff's Favor

When the government restricts First Amendment rights, the balance of hardships weighs in a plaintiff's favor. *See Firecross Ministries v. Municipality of Ponce*, 204 F. supp. 2d 244, 251 (D.P.R. 2002) (holding that "insofar as hardship goes, the balance weighs heavily against Defendants, since they have effectively silenced Plaintiffs' constitutionally protected speech").

The balance of equities tips in Plaintiffs' favor. Failing to grant the injunction will continue to deprive them of their constitutional rights pursuant to the First and Fourteenth Amendments. Defendants will suffer no harm if Plaintiffs granted the requested injunctive relief—at worst, Albert will recognize that he should do the right thing and testify truthfully. Rather, an injunction will merely restore the rights guaranteed by the U.S. Constitution. A temporary restraining order, to be converted into a preliminary injunction must issue.

### 4.5 Injunctive Relief is in the Public Interest

The public interest "favors protecting First Amendment rights." *Kelly v. City of Parkersburg*, 978 F. Supp. 2d 624, (S.D. W.V. 2013); *see also Carey v. FEC*, 791 F. Supp. 2d 121, 135-36 (D. D.C. 2011); *Mullin v. Sussex Cnty., Del.*, 861 F. Supp. 2d 411, 428 (D. Del. 2012). The public interest is served by issuing an injunction where "failure to issue the injunction would harm

the public's interest in protecting First Amendment rights in order to allow the free flow of ideas." *Magriz v. union do Tronquistas de Puerto Rico, Local 901*, 765 F. Supp. 2d 143, 157 (D.P.R. 2011) (citation omitted). Moreover, the unconstitutional actions here will harm nonparties to the case because it will also limit or infringe upon their rights. *See Wolfe Fin. Inc. v. Rodgeres*, 2018 U.S. Dist. LEXIS 64335, at *49 (M.D. N.C. April 17, 2018) (*citing McCarthy v. Fuller*, 810 F.3d 456, 461 (7th Cir. 2015). Others who would join their protest are similarly dissuaded. And, if Read is being framed, Defendants' actions serve as a warning against anyone who would come forward in opposition. Thus, the public interest weighs in favor of enjoining Sections 13A and 13B as applied.

### 4.6 At Most, a Minimal Bond Should Be Required

Rule 65 provides that a court cannot enter injunctive relief unless the moving party "gives security in the amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). In other words, a bond should only be required if the enjoined party will suffer any harm from the issuance of the injunction. *See Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 285 (4th Cir. 2002).

Defendants will suffer no damages if the Court issues the requested injunction, which will simply allow Plaintiffs to protest, necessary to their ability to exercise their constitutional rights. All that the injunction will do is repair the *status quo*. For this reason, Plaintiffs request that the injunction issue with no bond required. If a bond is required, Plaintiffs request that it be a token of $1.

### 5.0 CONCLUSION

Defendant Rafferty, as Chief of the Canton Police, issued a zero-tolerance policy as to protests against a frame up. The Defendant-officers, acting pursuant to that policy, threatened Plaintiffs with prosecution under Section 13A, for their protest outside D&E Pizza. The

- 14 -

Memorandum of Law in Support of Plaintiffs' Emergency Motion for a Temporary
Restraining Order and for a Preliminary Injunction

RANDAZZA | LEGAL GROUP

Fourteenth and First Amendments cannot tolerate this.  Plaintiffs cannot be left "at the mercy of political actors and the shifting winds of popular opinion, and without the chance for a fair hearing before a neutral judge. The rule of law begins to bleed into the rule of men." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2438 (2019) (Roberts, C.J., concurring).  Defendants' unconstitutional acts must be immediately enjoined by temporary restraining order, to be converted to a preliminary injunction following a hearing thereon.

Dated: November 8, 2023

Respectfully Submitted,

/s/ Jay M. Wolman
Marc J. Randazza, BBO# 651477
mjr@randazza.com, ecf@randazza.com
Jay M. Wolman, BBO# 666053
jmw@randazza.com
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: (978) 801-1776

*Attorneys for Plaintiffs.*