UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MEREDITH O'NEIL, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 23-cv-12685-DJC |
| ) | |
| CANTON POLICE DEPARTMENT, et al. ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                November 10, 2023

**I.    Introduction**

Two days ago, on November 8, 2023, Plaintiffs Meredith O'Neil, Jessica Svedine, Deanna Corby, Nick Rocco, Jenna Rocco and Roberto Silva (collectively, "Plaintiffs") filed this lawsuit against Defendants Canton Police Department, Town of Canton, Helena Rafferty, Robert Zepf, Michael Chin, Anthony Pascarelli and Joseph Silvasy (collectively, "Defendants"), alleging retaliation as to the exercise of their First Amendment rights under 42 U.S.C. § 1983 (Count I) and a declaratory judgment regarding the unconstitutionality of Mass. Gen. L. c. 268, §§ 13A, 13B, the witness intimidation statute, facially and as-applied to Plaintiffs (Count II).[1]  D. 1.  On the same day, Plaintiffs moved on an emergency basis for a temporary restraining order and preliminary injunction concerning a planned protest on Sunday, November 12, 2023, D. 4.  Given the timing of the request, after counsel for Defendants filed a notice of appearance yesterday, D.

---

[1] The Court recognizes that the Canton Police Department is not an independently suable entity, see Dwan v. City of Boston, 329 F.3d 275, 278 n.1 (1st Cir. 2003); Stratton v. City of Boston, 731 F. Supp. 42, 46 (D. Mass. 1989), and, therefore, has considered Plaintiffs' claims as asserted against the other Defendants.

9–10, the Court set an expedited schedule for a response to the motion by Defendants, D. 11, which Defendants have now filed, D. 12.[2] Having considered the parties' filings and for the reasons stated below, the Court DENIES Plaintiffs' motion for injunctive relief, D. 4.

## II.     Standard of Review

In deciding Plaintiffs' motion for injunctive relief (whether framed as a motion for a temporary restraining order or preliminary injunction), the Court must consider four factors: "[1] the movant[s'] likelihood of success on the merits of [their] claims; [2] whether and to what extent the movant[s] will suffer irreparable harm if the injunction is withheld; [3] the balance of hardships as between the parties; and [4] the effect, if any, that an injunction (or the withholding of one) may have on the public interest." Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 9 (1st Cir. 2013) (citing Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996)); see Latin Am. Music Co. v. Cardenas Fernandez & Assoc., Inc., 2 F. App'x 40, 42 n.2 (1st Cir. 2001) (recognizing that four-factor test for preliminary injunctions applies to temporary restraining orders). The movant "bears the burden of establishing that these four factors weigh in its favor." Esso Standard Oil Co. (P.R.) v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006) (citation omitted); see McKenzie v. Option One Mortg., 321 F. Supp. 3d 186, 188 (D. Mass. 2018). The Court must bear in mind that the issuance of any preliminary injunctive relief "is an extraordinary and drastic remedy." Allscripts Healthcare, LLC v. DR/Decision Res., LLC, 592 F. Supp. 3d 1, 3 (D. Mass. 2022) (quoting Peoples Federal Sav. Bank v. People's United Bank, 672 F.3d 1, 8–9 (1st Cir. 2012)). Since "[l]ikelihood of success [on the merits] is the main bearing wall of [this] framework," Ross-Simons, 102 F.3d at 16; Coquico, Inc. v. Rodríguez-Miranda, 562 F.3d 62, 66 (1st Cir. 2009), the Court begins its analysis below with this factor.

---

[2] Also, given the timing of the request and the "emergency" nature of the motion, the Court denies the request for a hearing and has instead decided this matter on the papers filed by the parties.

**III.   Factual Background**

The following factual allegations are drawn from Plaintiffs' verified complaint, D. 1, and the exhibits attached thereto.  Plaintiffs are private citizens who believe that the defendant in a pending state criminal proceeding, Karen Read ("Read"), has been framed for the death of her romantic partner, John O'Keefe ("O'Keefe"), by various residents of the Town of Canton (the "Town").  D. 1 ¶¶ 1, 10–23, 28.  Read's criminal trial is scheduled for March 2024, D. 1-1 at 11, and Plaintiffs report widespread public interest in her prosecution.  D. 1 ¶¶ 23–24; D. 1-1.  Various members of the public who believe in Read's innocence have staged public demonstrations in her support.  D. 1 ¶¶ 24–25.  During an August 8, 2023 meeting of the Town select board, Police Chief Helena Rafferty ("Rafferty") referred to events "that made residents of our community feel disrespected, targeted, and intimidated."  Id. ¶ 26.  Rafferty stated that she "respect[s] everyone's right to voice [different] viewpoints under the First Amendment" but "cannot accept . . . witnesses—these are residents who have not been charged with any crimes—being bullied in their homes, at their children's games, or on vacation, all under the guise of the First Amendment."  Id.

On November 5, 2023, Plaintiffs participated in a protest in front of a business in Canton, owned by a Town selectman, Chris Albert ("Albert"), who allegedly saw Read and O'Keefe the night of O'Keefe's death.  Id. ¶¶ 12–13, 29.  Also alleged by Plaintiffs, Albert is a family member of individuals whom Read's supporters believe were involved in covering up O'Keefe's murder and framing Read.  Id. ¶¶ 12–13, 17–19.  Albert is also himself a potential witness in the case.  See id. ¶ 60 (referring to Albert's "expected testimony").  At the protest, Plaintiffs held signs with slogans such as "Free Karen Reed" and "Justice."  Id. ¶ 30.  Police Officers Robert Zepf, Michael Chin, and Anthony Pascarelli, and Sergeant Joseph Silvasy (collectively, the "Police Officer Defendants") drove by the protest several times and then "stopped and informed the protestors

they were not permitted to protest there, because if the protest could be seen by Albert, they would deem it to be 'witness intimidation' and Plaintiffs would be arrested." Id. ¶¶ 31, 34. The Police Officer Defendants handed Plaintiffs a copy of Mass. Gen. L. c. 268, § 13A, a provision of the Commonwealth's witness intimidation statute. Id. ¶ 35. Plaintiffs refer to a planned protest this Sunday, November 12, 2023 and have alleged that their plans to proceed with same have been chilled by the actions of Defendants. Id. ¶¶ 39–40. Accordingly, Plaintiffs assert that injunctive relief now "is necessary to permit Plaintiffs to peacefully protest this upcoming Sunday, November 12, 2023." D. 4 at 1 (emphasis removed).

IV.   Discussion

   A.   **Reasonable Likelihood of Success on the Merits**

To obtain injunctive relief at this early stage of the litigation, Plaintiffs bear the burden of showing that they have a reasonable likelihood of success of either their claims, Count I (First Amendment retaliation) or Count II (challenging the constitutionality of provisions of the state witness intimidation statute). At their core, both claims challenge the intersection of the First Amendment and the state witness intimidation statute. Mass. Gen. L. c. 268 § 13A, in relevant part, provides that anyone "with the intent of interfering with, obstructing, or impeding the administration of justice, or with the intent of influencing any . . . witness, . . . in the discharge of his duty, pickets or parades . . . in or near a building or residence occupied or used by such . . . witness" shall be subject to criminal penalty. Mass. Gen. L. c. 268 § 13B, in relevant part, also provides criminal penalty for "[w]hoever, willfully, either directly or indirectly . . . misleads, intimidates or harasses another person who is a: (A) witness or potential witness . . . with the intent to or with reckless disregard for the fact that it may; (1) impede, obstruct, delay, prevent or otherwise interfere with: . . . a trial or other criminal proceeding of any type . . . or (2) punish, harm

or otherwise retaliate against any such person described in this section for such person or such person's family member's participation in any [such] proceedings."[3]

### 1. *Plaintiffs' Standing*

Before addressing the reasonable likelihood of success of Plaintiffs' claims, the Court turns to the threshold issue of standing as Defendants invoke same in their opposition. D. 12 at 7. To establish constitutional standing, "[a] plaintiff must show: that (1) he or she personally has suffered some actual or threatened injury as a result of the challenged conduct; (2) the injury can be fairly traced to that conduct; and (3) the injury likely will be redressed by a favorable decision from the court." Mangual v. Rotger-Sabat, 317 F.3d 45, 56 (1st Cir. 2003) (citation omitted). In asserting their First Amendment challenge, Plaintiffs may establish a concrete injury by alleging either that they intend to engage in a course of conduct arguably implicating their First Amendment rights for which they face "a credible threat of prosecution" or by alleging that they were "chilled" from exercising their First Amendment rights "to avoid enforcement consequences." Id. at 56–57. Although "the fear of prosecution must be 'objectively reasonable[,]' . . . the evidentiary bar that must be met is extremely low" and "[a] party need not violate the statute and suffer the penalty in order to generate a conflict worthy of standing in federal court." Id. (quoting R.I. Ass'n of Realtors, Inc. v. Whitehouse, 199 F.3d 26, 31 (1st Cir. 1999). That is, "[p]re-enforcement challenges to criminal statutes are cognizable under Article III." Picard v. Magliano, 42 F.4th 89, 97 (2d Cir. 2022) (internal citation and quotation marks omitted). Accordingly, a plaintiff has suffered an injury in fact and has standing when facing threatened enforcement of law that is

---

[3] Although Count II of the complaint challenges the constitutionality of the statute both facially and as-applied to Plaintiffs, D. 1 ¶¶ 51–61, Plaintiffs only rely upon their as-applied challenge to the statute and their First Amendment retaliation claim in their motion to assert a reasonable likelihood of success on the merits. D. 5 at 8. Accordingly, the Court confines its analysis to these two claims.

"sufficiently imminent." Id. (internal citation and quotation marks omitted). Nevertheless, "[p]articular weight must be given to the [g]overnment disavowal of any intention to prosecute on the basis of the [g]overnment's own interpretation of the statute and its rejection of plaintiffs' interpretation as unreasonable." Blum v. Holder, 744 F.3d 790, 798 (1st Cir. 2014).

Here, Plaintiffs argue they face a credible threat of prosecution based on the Police Officer Defendants' statement that Plaintiffs would be arrested for witness intimidation if they protested within view of the witness. D. 1 ¶ 34; D. 5 at 6. It is not clear from the record whether Plaintiffs have same or similar basis for injury-in-fact and standing as, for one example, the plaintiff in Picard, 42 F.4th at 97–98, who had been arrested (but the prosecution of same was abandoned) for violation of a New York law prohibiting people from, among other things "hold[ing] or display[ing] placards or signs containing written or printed matter, concerning the conduct of a trial being held in such courthouse or the character of the court or jury engaged in such trial or calling for or demanding any specified action or determination by such court or jury in connection with such trial." Id. at 95. Here, Plaintiffs rely upon the Police Officer Defendants' alleged statements about possible arrest and their distribution of a copy of Mass. Gen. L. c. 268 § 13A. D. 1 ¶¶ 34–35. It is not clear that such circumstances show a sufficiently imminent threat of arrest as to both §§ 13A and 13B, particularly where Plaintiffs make no allegations regarding their individual conduct during the November 5, 2023 protest or their conduct during the planned November 12, 2023 protest. Plaintiffs further rely upon a Canton Police Department reply to a public records request that denied the same on the basis of an exemption from disclosure for an "ongoing investigation." D. 1 ¶ 36; D. 1-2. The reference to an "ongoing investigation" does not suggest on this record that such investigation concerns these particular Plaintiffs or charges against

them under §§ 13A and 13B, such that the Court could conclude that their arrest or prosecution is sufficiently imminent.[4]

That having been said, there has been no disavowal of Defendants not to charge Plaintiffs or that their interpretation of statute is unreasonable. For all of these reasons and at this early juncture and on the factual record before it, the Court assumes that Plaintiffs have met the "extremely low" bar in this context and have shown injury-in-fact traceable to Defendants' conduct that would be redressed by the relief that they seek here and proceeds to an assessment of Plaintiffs' reasonable likelihood of success on the merits of Plaintiffs' claims.

### 2. As-Applied First Amendment Challenge

An as applied challenge "requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right." Picard, 42 F.4th at 101; see McGuire v. Reilly, 386 F.3d 45, 61 (1st Cir. 2004) (explaining that "the as-applied challenge is then an attempt to 'specify' the law by freshly testing its constitutionality in one particular fact situation").

#### a) Appropriate Level of Scrutiny

"[T]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." Heffron v. Int'l Soc'y for Krishna Consciousness, Inc., 452 U.S. 640, 647 (1981). Under the prevailing constitutional framework, the standard of judicial scrutiny warranted by a government restriction varies based on whether

---

[4] That another individual following the Read case has been criminally charged for a broader and wider course of allegedly criminal conduct, Commonwealth v. Kearney, 2023 Mass. Super. LEXIS 448, *1, 2–17 (Mass. Super. Nov. 9, 2023), does not necessarily make it more likely that Plaintiffs engaged in the November 5, 2023 protest as alleged or as planned for November 12, 2023 will be charged as well.

the restriction is content-based or content-neutral.  See McCoy v. Town of Pittsfield, 59 F.4th 497, 506 (1st Cir. 2023).[5]

Content-based regulations "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests.  Reed v. Town of Gilbert, Ariz., 576 U.S. 155, 163 (2015).  That is, content-based restrictions are subject to strict scrutiny.  A restriction is content-based if it "draws distinctions based on the message a speaker conveys," "cannot be justified without reference to the content of the regulated speech," or was "adopted by the government because of disagreement with the message [the speech] conveys."  March v. Mills, 867 F.3d 46, 54 (1st Cir. 2017) (quoting Reed, 576 U.S. at 164 (internal quotation marks omitted) (alteration in original)).

Following Reed, it appears that most courts have concluded that witness intimidation statutes such as the one at issue in this case are content-based and subject to strict scrutiny when applied to expressive conduct, because they limit speech related to a pending court proceeding but not speech on other subjects.  See Picard, 42 F.4th at 95, 102–03 (applying strict scrutiny to a state statute that barred speech within 200 feet of a courthouse concerning, among other things, "the conduct of a trial being held in such courthouse"); Commonwealth v. Frazier, 99 Mass. App. Ct. 1120, 2021 WL 1561358, at *2–3 (2021) (unpublished opinion) (suggesting that strict scrutiny would apply to an as-applied challenge to § 13B and citing to similar challenges to statutes in other states).  Accordingly, the Court will assess whether the provisions here are narrowly tailored to serve compelling state interests.

---

[5] The Court notes that the permitted level of restriction on speech may also vary based on whether the speech takes place on a public forum.  See Curnin v. Town of Egremont, 510 F.3d 24, 28 (1st Cir. 2007).  Here, Plaintiffs assert and Defendants do not dispute, that the speech took place on a public sidewalk.  D. 5 at 9.  The Court accepts that assertion for the purposes of deciding this motion.

b)      Application of Strict Scrutiny

The Supreme Court has recognized the government's interest in "protecting its judicial system from the pressures which picketing near a courthouse might create." Cox v. State of La., 379 U.S. 559, 562 (1965).  Cox acknowledged that the government "may adopt safeguards necessary and appropriate to assure that the administration of justice at all stages is free from outside control and influence" and referred to a statute banning "pickets or parades in or near a building housing a court" as "[a] narrowly drawn statute . . . necessary and appropriate to vindicate the State's interest in assuring justice under law." Id. at 560, 562.  Although Cox was decided before the Supreme Court's modern jurisprudence distinguishing between content-based and content-neutral restrictions, those decisions have not overruled Cox.  Picard, 42 F.4th at 105.  In addition, courts have "consistently emphasized the compelling State interest in protecting witnesses from intimidation, harassment, and threats of physical violence." Frazier, 2021 WL 1561358, at *3.  "The purpose of the statute [at issue here] is to protect witnesses from being bullied or harried so that they do not become reluctant to testify or to give truthful evidence in investigations or judicial proceedings.  The larger purpose is to prevent interference with the administration of justice." Commonwealth v. McCreary, 45 Mass. App. Ct. 797, 799 (1998).  Here, the Court concludes that §§ 13A and 13B serve the compelling interests in protecting the orderly administration of justice.

Even as applied to Plaintiffs, enforcement of the statutes is narrowly tailored to serve that compelling interest.  The statute itself is narrowed by an intent requirement that aligns with the Defendants' compelling interest in protecting the administration of justice.  Mass. Gen. L. c. 268 § 13A (prohibiting conduct "with the intent of interfering with, obstructing, or impeding the administration of justice, or with the intent of influencing any judge, juror, witness, or court officer); id. § 13B (prohibiting conduct "with the intent to or with reckless disregard for the fact

9

that it may; (1) impede, obstruct, delay, prevent or otherwise interfere with: . . . a trial or other criminal proceeding of any type"); see March, 867 F.3d at 56 (finding that disruptive-intent requirement of noise provision "narrow[s] the measure's reach"). The statute is also narrowly tailored as it prohibits such picketing and parading (with the requisite intent) in or near a building or residence that he occupies. As alleged, Plaintiffs did not gather in any other public location, but outside of Albert's place of business. There is nothing in the statute, or as applied to Plaintiffs, that would prohibit their gathering to do the same in other locations. Moreover, the compelling governmental interest in the orderly administration of justice is not limited to the courthouse itself as Plaintiffs seem to suggest. See, e.g., Lafferty v. Jones, 246 A.3d 429, 452 (Conn. 2020) (affirming sanctions against defendant for remarks made on radio broadcast which "produced additional threats to those involved in the case and created a hostile atmosphere that could discourage individuals from participating in the litigation"). The fact that the protest took place outside an individual witness's place of work and involved multiple participants tends to increase, not decrease, the risk that the witness's testimony may be influenced. See Cox, 379 U.S. at 562 (emphasizing need to shield fair trial from "influence or domination by either a hostile or friendly mob"); Lafferty, 246 A.3d at 455 (concluding that speech "was calculated to interfere with the fairness of the proceedings as it directly targeted opposing counsel").

Based on the present record, the Court concludes that Plaintiffs are not reasonably likely to succeed on the merits of their as applied First Amendment challenge against §§ 13A and 13B.

3. *First Amendment Retaliation Claim (Count I)*

To prevail on a First Amendment retaliation claim, Plaintiffs must show (1) "that [their] conduct was constitutionally protected" and (2) "proof of a causal connection between the allegedly protected conduct and the supposedly retaliatory response." Najas Realty, LLC v. Seekonk Water Dist., 821 F.3d 134, 141 (1st Cir. 2016). Here, Plaintiffs assert constitutionally

protected conduct in the form of "their November 5, 2023, constitutionally protected speech" and an adverse action in the form of Defendants "threatening Plaintiffs with arrest." D. 1 ¶ 42.[6] The Court notes that "retaliatory arrest cases also present a tenuous causal connection between the defendant's alleged animus and the plaintiff's injury" because it is "it is particularly difficult to determine whether the adverse government action was caused by the officer's malice or the plaintiff's potentially criminal conduct." See Nieves v. Bartlett, 587 U.S. __, 139 S. Ct. 1715, 1723 (2019).

In light of the Court's conclusion that Plaintiffs are not likely to succeed on their as applied to challenge to §§ 13A, 13B in Count II, and on the record before the Court here, the Court concludes that Plaintiffs are similarly not likely to succeed in establishing the requisite retaliatory animus to support Count I. Plaintiffs' assertion that they "would not have been threatened with arrest" if they had expressed support for the witness's expected testimony is not supported by the factual allegations of the verified complaint. D. 1 ¶ 47; see id. ¶ 26 (alleging that Rafferty expressed respect for various viewpoints regarding the Read prosecution). On the record here, the Police Officer Defendants merely advised Plaintiffs of the existence of the witness intimidation

---

[6] Count I also invokes Plaintiffs' First Amendment right to petition the government. Although Plaintiffs' freedom of speech and freedom to petition government for a redress of grievances are cognate rights, they are not identical. Borough of Duryea, Pa. v. Guarnieri, 564 U.S. 379, 387 (2011). "A petition conveys the special concerns of its author to the government and, in its usual form, requests action by the government to address those concerns." Id. at 388–89. Even as alleged, the complaint does not suggest that Plaintiffs were engaged in constitutionally protected petitioning of Albert in his role as a Town selectman and seeking governmental action to address their concerns regarding the Read prosecution. Instead, Plaintiffs were concerned with Albert's "expected testimony" as a private citizen and were "encouraging him to, in their opinion, testify truthfully." D. 1 ¶¶ 47, 60; see Najas Realty, 821 F.3d at 141 (recognizing that it was unclear whether plaintiffs were engaged in petitioning conduct when they submitted a development application to local planning board).

statute and expressed an intent to enforce the law if violated. Accordingly, the Court concludes that Plaintiffs are not likely to demonstrate a likelihood of success on the retaliation claim.

### B.  Risk of Irreparable Harm

"As the Supreme Court has explained, '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" Sindicato Puertorriqueño de Trabajadores v. Fortuño, 699 F.3d 1, 10–11 (1st Cir. 2012) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)). Here, however, Plaintiffs have not shown a risk of irreparable harm if the injunctive relief is not granted. Although Plaintiffs alleged that they "have determined to not move forward with a November 12, 2023, planned protest in support of Read and other similar such protests," they have provided no details regarding the planned protest and why such protest would inevitably be viewed by law enforcement as violative of §§ 13A, 13B. Defendants are not alleged to have issued any prohibition on protests related to the Read prosecution or to have halted any peaceful, non-threatening protests regarding the Read prosecution. Moreover, it is not clear that any exercise of free speech has been chilled where Plaintiffs have other public forum to express their views, particularly given the widespread news coverage and public interest that has already been generated regarding same, D. 1 ¶¶ 23–25.[7]

### C.  Balance of Harms and Public Interest

With respect to the public interest, the Court recognizes that "[p]rotecting rights to free

---

[7] Plaintiffs argue that Defendants' "threatened enforcement" constitutes a prior restraint on speech. D. 5 at 12. "An invalid prior restraint is a regulation that '[gives] public officials the power to deny use of a forum in advance of actual expression.'" Reddy v. Foster, No. 14-CV-299-JL, 2016 WL 1305141, at *10 (D.N.H. Apr. 1, 2016) (alteration in original) (quoting Ward v. Rock Against Racism, 491 U.S. 781, 795 n.5 (1989)), aff'd, 845 F.3d 493 (1st Cir. 2017). Here, Defendants do not appear to have required that Plaintiffs seek permission to engage in speech or deemed Plaintiffs' a violation of state law in advance of its actual occurrence. For the purposes of the present motion, the Court credits Defendants' assertion that "[a]ny possible police action that may be taken in the future will be predicated upon and in response to is yet unknown conduct taken by the Plaintiffs." D. 12 at 7.

speech is ipso facto in the interest of the general public." McBreairty v. Sch. Bd. of RSU 22, 616 F. Supp. 3d 79, 98 (D. Me. 2022) (internal quotation marks omitted) (alteration in original) (quoting Cutting v. City of Portland, No. 2:13-cv-359-GZS, 2014 WL 580155, at *10 (D. Me. Feb. 12, 2014) (internal quotation marks omitted)).  In the present case, however, that interest of the Plaintiffs in obtaining the injunctive relief weighs against the Defendants' interest in enforcement of law in the Town, and consideration of the public interest in ensuring the administration of justice, including interference with witnesses.  See Cox, 379 U.S. at 562 (explaining "unhindered and untrammeled functioning of our courts is part of the very foundation of our constitutional democracy"); McCreary, 45 Mass. App. Ct. at 799; Laviena-Torres v. Colon-Alsina, No. CIV. 12-1277 JAF, 2013 WL 1973249, at *14 (D.P.R. May 13, 2013) (identifying witness safety as "topic of clear public interest").

Accordingly, the Court concludes that the balance of harms between the parties and the consideration of the public interest also weigh against the injunctive relief that Plaintiffs seek.

### V. Conclusion

For all these reasons, the Court DENIES Plaintiffs' motion for a temporary restraining order and preliminary injunction, D. 4.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge