UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 1:23-CV-12685

MEREDITH O'NEIL, JESSICA
SVEDINE, DEANNA CORBY, NICK
ROCCO, JENNA ROCCO, AND ROBERTO
SILVA,
        Plaintiffs,

v.

CANTON POLICE DEPARTMENT, THE
TOWN OF CANTON, MASSACHUSETTS,
HELENA RAFFERTY, as Chief of the Canton
Police Department and in her personal capacity,
and OFFICER ROBERT ZEPF, OFFICER MICHAEL
CHIN, OFFICER ANTHONY PASCARELLI, and
SARGEANT JOSEPH SILVASY, in their official
Capacities,
        Defendants.

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(C)

The Defendants, Town of Canton, Helena Rafferty, Robert Zepf, Micheal Chin, Anthoney Pascarelli, and Joseph Silvasy (henceforth "Defendants"), submits the following memorandum in support of their motion for judgment on the pleadings.

The Plaintiffs bring a claim arising under 42 U.S.C. § 1983 and the First and Fourteenth Amendment to the United States Constitution. Plaintiffs contend that Mass. Gen. L. c. 268, § 13A and 13B are unconstitutional and violate their First Amendment right to free speech, expression, and petition.

### I.    FACTUAL ALLEGATIONS

Plaintiffs support and believe that the defendant in a pending state criminal proceeding, Karen Read, has been framed for the death of her romantic partner, John O'Keefe, who's death

1

occurred in the Town of Canton. (Doc. No. 1 at ¶¶ 11, 28). The Plaintiffs further believe various residents of the Town of Canton, including Chris Albert, his brother Brian Albert, and his son Colin Albert, are responsible for an alleged coverup for the murder of O'Keefe. (Doc. No. 1 at ¶¶17-28).

Plaintiffs allege that during an August 8, 2023, meeting of the Town select board, Police Chief Helena Rafferty stated, in reference to demonstrations regarding the criminal trial of O'Keefe, "residents of our community feel disrespected, targeted, and intimidated". (Doc. No. 1 at ¶26). Rafferty further is alleged to have stated that she "respect[s] everyone's right to voice [different] viewpoints under the First Amendment" but "cannot accept . . . witnesses—these are residents who have not been charged with any crimes—being bullied in their homes, at their children's games, or on vacation, all under the guise of the First Amendment." (Id.) On November 5, 2023, Plaintiffs protested Chris Albert and his expected testimony in the Read murder trial across from Chris Albert's business, D&E pizza. (Doc. No. 1 at ¶¶ 25, 29, 45 47, 60, and pg. 2).  Chris Albert was known by the Plaintiffs as having had drinks with O'Keefe and Read the night of O'Keefe's death. (Doc. No. 1 at ¶5). Chris Albert was known by Plaintiffs to have seen Read and O'Keefe the night of O'Keefe's death. (Doc. No. 1 at ¶12). Chris Albert is the brother of Brian Albert and the father of Colin Albert, two individuals the Plaintiffs believe beat up O'Keefe to the point of unconsciousness the night of his death. (Doc. No. 1 at ¶¶12, 17). Plaintiffs anticipate Chris Albert's testimony to be against Karen Read. (Doc. No. 1 at ¶60).

At the protest, Plaintiffs held a number of signs and used several various slogans, including ones indicating their position on Read's arrest and prosecution (i.e. "Free Karen Read"). (Doc No. 1 at ¶30).  Canton Police Officers Robert Zepf, Michael Chin, Anthony Pascarelli, and Sergeant Joseph Silvasy stopped at the ongoing protest after driving by and

informed the crowd of protestors that "they were not permitted to protest there, because if the protest could be seen by Chris Albert, they would deem it to be 'witness intimidation' and Plaintiffs would be arrested." (Doc. No. 1 at ¶34). The Police Officer Defendants handed the Plaintiffs a copy of Mass. Gen. L. c. 268, § 13A, a provision of the Massachusetts witness intimidation statute that outlines unlawful picketing to influence a witness, informing them of the law which they stated they could be charged with violating. (Doc. No. 1 at ¶35). None of the Plaintiffs were arrested at the protest and an investigation was still pending at the time of the pleading, November 7, 2023. (Doc. No. 1 at ¶36).

Plaintiffs state in their verified complaint that they had planned to return regularly to D&E Pizza to continue protesting across the street. (Doc. No. 1 at pg. 3). Plaintiffs specifically sought a preliminary injunction enjoining the defendants from enforcing Mass. Gen. L. c. 268, § 13A & 13B and for declaratory judgment that such sections were unconstitutional under the First and Fourteenth Amendments of the United States Constitution. (Doc. No. 1 at pg. 13).

Plaintiffs raise two causes of action in their complaint: (1) seeking compensatory damages under 42 U.S.C. 1983 for alleged violations of their First Amendment rights for allegedly chilling the Plaintiffs speech and (2) seeking declaratory and injunctive relief under 42 U.S.C. 1983 enjoining the enforcement of Mass. Gen. L. c. 268, § 13A & 13B and declaring them unconstitutionally vague in their application. This Court did deny Plaintiffs emergency motion for a preliminary injunction on November 10, 2023. Plaintiffs appealed that decision on December 10, 2023 which is currently still pending before the 1st Circuit Court of Appeals.

II.     **STANDARD OF REVIEW**

Under Fed. R. Civ. P. 12(c), a motion for judgment on the pleadings considers the factual allegations in both the complaint and the answer and is governed by the same standard as a Rule 12(b)(6) motion to dismiss. *See Perez—Acevedo v. Rivero—Cubano*, 520 F.3d 26, 29 (1st Cir. 2008). On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (internal citation omitted). The Court reads the complaint "as a whole" and must conduct a two-step, context-specific inquiry. *García-Catalán v. U.S.*, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory allegations. *Id*. Factual allegations must be accepted as true, while conclusory allegations are not credited. *Id*. Second, the Court must determine whether the factual allegations present a "reasonable inference that the [Defendants are] liable for the misconduct alleged." *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleadings that fail to include "enough facts to state a claim to relief that is plausible on its face" must be dismissed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Labels and conclusions or "'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). The Court draws on its "judicial experience and common sense" in determining whether a claim crosses the plausibility threshold. *García-Catalán*, 734 F.3d at 103 (citation omitted).

### III.     ARGUMENT

**A. Plaintiffs' Claims Must Fail Because Enforcement of M.G.L. c. 268 §§13A and 13B Did Not Unconstitutionally Chill Their Speech.**

**i. The Constitutionality of M.G.L. c. 268 §§ 13A and 13B**

The First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc'y for Krishna Consciousness*, Inc., 452 U.S. 640, 647 (1981). Under the prevailing constitutional framework, the standard of judicial scrutiny warranted by a government restriction varies based on whether the restriction is content-based or content-neutral. *See McCoy v. Town of Pittsfield*, 59 F.4th 497, 506 (1st Cir. 2023).

Content-based regulations "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). That is, content-based restrictions are subject to strict scrutiny. A restriction is content-based if it "draws distinctions based on the message a speaker conveys," "cannot be justified without reference to the content of the regulated speech," or was "adopted by the government because of disagreement with the message [the speech] conveys." *March v. Mills*, 867 F.3d 46, 54 (1st Cir. 2017) (quoting *Reed*, 576 U.S. at 164 (internal quotation marks omitted) (alteration in original)).

Following *Reed*, most courts have concluded that witness intimidation statutes are content-based and subject to strict scrutiny when applied to expressive conduct because they limit speech related to a pending court proceeding but not speech on other subjects. *See Picard v. Magliano*, 42 F.4th 89, 95 (2d Cir. 2022) (applying strict scrutiny to a state statute that barred speech within 200 feet of a courthouse concerning, among other things, "the conduct of a trial being held in such courthouse"); *Commonwealth v. Frazier*, 99 Mass. App. Ct. 1120, at *2-3 (2021) (unpublished opinion) (suggesting that strict scrutiny would apply to an as-applied challenge to § 13B and citing to similar challenges to statutes in other states).

5

The United States Supreme Court has recognized the government's interest in "protecting its judicial system from the pressures which picketing near a courthouse might create." *Cox v. State of La.*, 379 U.S. 559, 562 (1965). *Cox* acknowledged that the government "may adopt safeguards necessary and appropriate to assure that the administration of justice at all stages is free from outside control and influence" and referred to a statute banning "pickets or parades in or near a building housing a court" as "[a] narrowly drawn statute . . . necessary and appropriate to vindicate the State's interest in assuring justice under law." *Id*. at 560, 562. Similar restrictions under law have been long recognized. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 n.18 (1984) (finding first amendment rights may be subordinated to other interests to ensure a fair trial and the administration of justice). Courts have "consistently emphasized the compelling State interest in protecting witnesses from intimidation, harassment, and threats of physical violence." *Frazier*, 99 Mass. App. Ct. 1120, 2021 WL 1561358, at *3. The First Amendment does not supersede the proper administration of justice and the court's obligation to ensure a fair trial, including protecting witnesses from intimidation. *See Commonwealth v. McCreary*. 45 *Mass. App. Ct.* 797, 799 (1998) (purpose of witness intimidation statute "is to protect witnesses from being bullied or harried so that they do not become reluctant to testify or, to give truthful evidence in investigatory or judicial proceedings ... [and] to prevent interference with the administration of justice").

Here, enforcement of the statute *is* narrowly tailored to serve the compelling interest of protecting the administration of justice. The Massachusetts statutes are narrowly tailored to protect against particular conduct targeting judges, jurors, court officers, or witnesses (Mass. Gen. L. c. 268 § 13A) and to protect against picketing and parading (with the requisite intent) in or near a building or residence that a witness occupies (Mass. Gen. L. c. 268, § 13B). Both

statues are narrowed by an intent requirement that aligns with the Defendants' compelling interest in protecting the administration of justice. Mass. Gen. L. c. 268 § 13A (prohibiting conduct "with the intent of interfering with, obstructing, or impeding the administration of justice, or with the intent of influencing any judge, juror, witness, or court officer"); Mass. Gen. L. c. 268 § 13B (prohibiting conduct "with the intent to or with reckless disregard for the fact that it may; (1) impede, obstruct, delay, prevent or otherwise interfere with: . . . a trial or other criminal proceeding of any type"); *see March*, 867 F.3d at 56 (finding that disruptive-intent requirement of noise provision "narrow[s] the measure's reach"). Moreover, the "words of the statute are commonly accepted and understood, and the term 'harass' is sufficiently defined under G.L. c. 268, § 13B, to put an individual on notice of the proscribed conduct. *Commonwealth v. Kearney*, Nos. 23BP116, 23BP117, 23BP118, 23BP119, 23BP120, 23BP123, 23BP124, 23BP125, 23BP126, 2023 Mass. Super. LEXIS 448, at *29 (Nov. 9, 2023).

**ii. As Plead, the Enforcement of these Statutes Did Not Unconstitutionally Chill Plaintiffs Speech**

As alleged under pains and penalty of perjury in their verified complaint, Plaintiffs gathered across the street from Albert's place of business, D&E Pizza. (Doc. No. 1 at ¶29). Plaintiffs verified complaint is clear that such was done to protest Chris Albert's expected testimony, testimony they believed would be false and unfavorable to Read's defense. (Doc. No. 1 at ¶¶ 25, 29, 45 47, 55, 60, and pg. 2). Plaintiffs admit they were knowledgeable of Albert's role in the hours proceeding O'Keefe's death and that he was a person with familial connections to other key witnesses that they believe are involved in the case. (Doc. No. 1 at ¶¶5, 12, 17, 60). The fact that the protest took place outside of an individual witness's place of work and involved multiple participants increases the risk that the witness's testimony may be influenced. *See Cox*,

379 U.S. at 562 (emphasizing need to shield fair trial from "influence or domination by either a hostile or friendly mob"); *Lafferty*, 246 A.3d at 455 (concluding that speech "was calculated to interfere with the fairness of the proceedings as it directly targeted opposing counsel").

Plaintiffs' verified complaint therefore admits they had the requisite intent of influencing the expected (what they perceived untruthful) testimony. (Doc. No. 1 at ¶¶ 25, 29, 45 47, 60, and pg. 2). Plaintiffs protest was intentionally at this location across the street from Albert's place of business, where they were aware he was located at the time the police informed them of the statute. *See Commonwealth v. Conley*, 34 Mass. App. Ct. 50, 53, 606 N.E.2d 940 (1993) (Attributing a violation under the statute where the target of the alleged intimidation was a witness in a stage of a criminal proceeding, the person willfully endeavored or tried to influence the target, did so by means of intimidation and did so with the purpose of influencing target).

M. G. L ch. 268 §§13A & 13B are sufficiently clear. *See Commonwealth v. McGhee*, 472 Mass. 405, 414 (the language in a statute "will be constitutionally adequate if it 'conveys [a] sufficiently definite warning as to the prescribed conduct when measured by common understanding and practice.'"). Here, the officers reasonably interpreted the statute, which they handed to the Plaintiffs, as applying when such protests intending to influence the witness's testimony is intentionally within eyeshot. As such, Plaintiffs claims must fail as a matter of law as the M. G. L ch. 268 §§13A & 13B are both constitutionally constructed and were, per Plaintiffs admissions within their verified complaint, properly enforced.

### B. Plaintiffs' Claims Against the Individually Named Defendants Fail Due to Qualified Immunity

Plaintiffs' claims, as stated in their verified complaint, vindicate that the individually named Defendants (Rafferty, Zepf, Chin, Pascarelli and Silvasy) must be qualifiedly immune for

their reasonable judgments about the enforcement of M. G. L ch. 268 §§13A & 13B. *See Pearson* v. *Callahan,* 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (held that courts may grant qualified immunity on the ground that a purported right was not "clearly established" by prior case law, without resolving the often more difficult question whether the purported right exists at all). To the extent Plaintiffs base their claims on M. G. L ch. 268 §§13A & 13B being unconstitutionally vague, the individually named Defendants cannot be held liable for "mistaken judgments" as to its enforceability. *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)(The goal of qualified immunity is to "give[] government officials breathing room to make reasonable but mistaken judgments about open legal questions.").

Qualified immunity protects public employees "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73, L. Ed. 2d 396 (1982). Qualified immunity therefore protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Qualified immunity is determined according to a two-part test. *See Pearson v. Callahan*, 555 U.S. 223, 232-33 (2009); *Maldonado v. Fontanes*, 568 F. 3d 263, 268-9 (1st Cir. 2009). The relevant inquiries are (1) whether a public official has violated a plaintiff's constitutionally protected rights; and (2) whether the particular right was clearly established at the time of the violation. *Estrada v. Rhode Island*, 594 F.3d 56, 62-63 (1st Cir. 2010); *Maldonado*, 568 F. 3d at 268-9. Even at this early stage in the litigation, on the facts as plead in the verified complaint, the individually named defendants can be clearly found to have enforcing a law that has never been previously held unconstitutional.

A.  *No Clearly Established Right*

To determine whether the Plaintiffs' rights were clearly established "existing precedent must have placed the statutory or constitutional question beyond debate." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1 (2021) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017); *Kisela v. Hughes*, 138 S. Ct. 1148, 1152, (2018). The Plaintiffs must point to controlling authority, or a "robust consensus" of persuasive authority, clearly demonstrating the "violative nature of [the Defendants'] particular conduct." *Ashcroft v. a-Kidd*, 563 U.S. 731, 741-42 (2011) (internal citations and quotations omitted). To be clearly established, a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Id.,* at 741, 131 S. Ct. 2074, 2083, 179 L. Ed. 1149 (quoting *Anderson* v. *Creighton,* 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)). The "clearly established" standard protects the balance between constitutional rights and government officials' effective performance of their duties by ensuring that officials can " 'reasonably . . . anticipate when their conduct may give rise to liability for damages.' *Anderson, supra,* at 639, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (quoting *Davis* v. *Scherer*, 468 U.S. 183, 195, 104 S. Ct. 3012, 82 L. Ed. 2d 139 (1984)). The Plaintiffs' burden to demonstrate that the law was clearly established is thus "a heavy burden indeed." *Lachance v. Town of Charlton*, 990 F.3d 14, 20 (1st Cir. 2021).

There are two subsidiary issues to the clearly established prong which must be considered: (a) the clarity of the law in general at the time of the alleged violation; and (b) whether a reasonable person in the Defendants' position "would have understood that his conduct violated the Plaintiff[s'] constitutional rights." *Raiche v. Pietroski,* 623 F.3d 30, 35-36 (1st Cir. 2010) (*quoting Maldonado*, 568 F.3d at 268).

Plaintiffs contend that the individually named Defendants violated their First Amendment right by threatening the Plaintiffs with enforcing Mass. Gen. Laws, ch. 268, § 13A.[1] However, Plaintiffs, through their pleadings, demonstrate that they do not have an established right to protest outside of a known witness's place of business. Plaintiffs are challenging the constitutionality of Mass. Gen. Laws, ch. 268, § 13A and 13B and have appealed this Court's decision affirming the statute to the First Circuit. This challenge seeks to call into question the validity of the statute which they recognize exists and states their conduct was prohibited. As the statute has not been deemed unconstitutional, the individual defendants' enforcement of the longstanding statute cannot be deemed a constitutional violation for purposes of the current civil action.

Further the Plaintiffs cannot show that existing precedent placing the statute in question beyond debate existed. As the statute has not been deemed unconstitutional and no current challenges place the statute beyond the realm of debate Plaintiffs have not met the heavy burden required to defeat qualified immunity.

B. *Defendants Acted Reasonably Within Scope of their Duties*

The individually named defendants, Rafferty, Zepf, Chin, Pascarelli and Silvasy, all acted in their capacities as police officers. Even if it is determined that the statute is unconstitutional a reasonable person in the Defendants position would have believed that they were following the letter of a long-held statute. This enforcement of the statute falls squarely in the Defendants role as law enforcement officers and therefore the defendant Officers and Chief are all shielded from any liability under qualified immunity.

C. **First Amendment Retaliation Claim**

---

[1] Ultimately Officer Zeph cited several of the Plaintiffs for violation of Mass. Gen. Laws, ch. 268, § 13A, Plaintiffs were notified of such several days later in the mail.

To prevail on a First Amendment retaliation claim, Plaintiffs must show (1) "that [their] conduct was constitutionally protected" and (2) "proof of a causal connection between the allegedly protected conduct and the supposedly retaliatory response." *Najas Realty, LLC v. Seekonk Water Dist.*, 821 F.3d 134, 141 (1st Cir. 2016). As discussed, Plaintiffs cannot show that their conduct was constitutionally protected as their conduct and speech exceeded the bounds protected by the First Amendment. The First Amendment does not supersede the proper administration of justice and the court's obligation to ensure a fair trial, including protecting witnesses from intimidation. *See Commonwealth v. McCreary.* 45 Mass. App. Ct. 797, 799 (1998).

Plaintiffs stated in their Complaint that they sought to "encourage [Chris Albert] to, in their opinion, testify truthfully." (Doc. No. 1 at ¶47). This self-acknowledgment of the Plaintiffs motives highlights the subjective nature of their demonstrations and shows a disregard for the established statutes protecting witnesses and their testimony. The Plaintiffs' demonstration pushing what they believe would be "truthful" testimony disrupts the proper administration of justice and constitutes interference in trial proceedings both of which are not constitutionally protected actions.

Further, as previously discussed the Plaintiffs' mere challenge to the constitutionality of M. G. L. ch. 268 §§13A & 13B, demonstrates that their conduct the day of the demonstration was not constitutionally protected and that the Town and individual Defendants are free from liability for their encouragement to the Defendants to follow the established law.

Plaintiffs also state in their complaint that "[i]t is clearly established that there is First Amendment right to petition the government and its officials, such as Selectman Chris Albert." (Doc. No. 1 at ¶45). However, it is clear throughout the Plaintiffs' complaint that the demonstration held "across the street from Chris Albert's business, D&E Pizza" was not regarding his capacity as a Selectman but rather his obligation as a witness in a contentious criminal trial. (Doc. No. 1 at

12

¶29). Therefore, Plaintiffs again fail to show that their actions were constitutionally protected and that the Town and individual Defendants acted in retaliation to their First Amendment rights.

## IV.     CONCLUSION

In summary, Plaintiffs' claims must fail because Plaintiffs conduct as stated was violative of Mass. Gen. Laws, ch. 268, §§ 13A and 13B, a constitutionally valid law narrowly tailored to meet a compelling state interest. Further, even if the Court does not make the first determination a full factual record is not needed to determine that the individual defendant officers are qualifiedly immune based on Plaintiffs' assertions in their pleadings.

WHEREFORE, for the foregoing reasons, the Defendants respectfully requests this Honorable Court grant its motion for judgment on the pleadings and dismiss the Plaintiffs' Complaint in its entirety.

Respectfully submitted,
DEFENDANTS
By their Attorneys,

/s/ _Joseph Mongiardo_____
Douglas I. Louison (BBO# 545191)
dlouison@lccplaw.com
Joseph A. Mongiardo (BBO# 710670)
jmongiardo@lccplaw.com
Manuel D. Soza (BBO# 713907)
msoza@lccplaw.com
Louison, Costello, Condon & Pfaff, LLP
Ten Post Office Square, Suite 1330
Boston, MA 02109
(617) 439-0305

## **CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 19, 2024.

/s/ *Joseph Mongiardo*
_____
Joseph A. Mongiardo