# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MEREDITH O'NEIL, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>CANTON POLICE DEPARTMENT, et al. )<br>)<br>Defendants. ) | Case No. 23-cv-12685-DJC |

## MEMORANDUM AND ORDER

CASPER, J.                                                                December 20, 2024

## I.    Introduction

Plaintiffs Meredith O'Neil, Jessica Svedine, Deanna Corby and Roberto Silva (collectively, "Plaintiffs")[1] filed this lawsuit against Defendants Canton Police Department, Town of Canton, Helena Rafferty, Robert Zepf, Michael Chin, Anthony Pascarelli and Joseph Silvasy (collectively, "Defendants"), alleging retaliation as to the exercise of their First Amendment rights under 42 U.S.C. § 1983 (Count I) and seeking declaratory judgment and injunctive relief regarding the unconstitutionality of Mass. Gen. L. c. 268, §§ 13A, 13B, the witness intimidation statutes, facially and as-applied to Plaintiffs (Count II).[2]  D. 1.  Defendants have moved for judgment on the pleadings.  D. 40.  Having considered the parties' filings and counsel's arguments at the motion hearing, D. 55, and for the reasons stated below, the Court ALLOWS Defendants' motion for

---

[1] The Court notes that plaintiffs Jenna Rocco and Nick Rocco have been voluntarily dismissed.  D. 27; D. 38.

[2] The Canton Police Department is not an independently suable entity, see Dwan v. City of Boston, 329 F.3d 275, 278 n.1 (1st Cir. 2003), and, therefore, the Court has considered Plaintiffs' claims as asserted against the other Defendants including the Town of Canton.

judgment on the pleadings, D. 40.

## II.    Standard of Review

Rule 12(c) allows a party to move for judgment on the pleadings at any time "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is "ordinarily accorded much the same treatment" as a Rule 12(b)(6) motion. Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54 (1st Cir. 2006). To survive a motion for judgment on the pleadings, therefore, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Because a motion for judgment on the pleadings "calls for an assessment of the merits of the case at an embryonic stage," the Court "view[s] the facts contained in the pleadings in the light most favorable to the nonmovant and draw[s] all reasonable inferences therefrom" in his favor. Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008) (internal quotation marks and citation omitted).

On a Rule 12(c) motion, unlike a Rule 12(b) motion, the Court considers the pleadings as a whole, including the answer. See Aponte-Torres, 445 F.3d at 54–55. Those assertions in the answer that have not been denied and do not conflict with the assertions in the complaint are taken as true. See Santiago v. Bloise, 741 F. Supp. 2d 357, 360 (D. Mass. 2010). In addition, "[t]he court may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice." R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 182 (1st Cir. 2006). Still, "[l]ike Rule 12(b)(6), Rule 12(c) does not allow for any resolution of contested facts; rather, a court may enter judgment on the pleadings only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." Aponte-Torres, 445 F.3d at 54.

2

### III.    Factual Background

Unless otherwise indicated, the following summary is based on allegations in Plaintiffs' verified complaint, D. 1, and accompanying exhibits, and the undisputed facts in Defendants' answer. D. 14.

Plaintiffs are private citizens who believe that the defendant in a state criminal proceeding, Karen Read ("Read"), had been framed for the death of her romantic partner, John O'Keefe ("O'Keefe"), by various residents of the Town of Canton (the "Town"). D. 1 ¶¶ 1, 10–23, 28. There has been widespread public interest in Read's prosecution and various members of the public had staged public demonstrations in support of Read. Id. ¶¶ 23–25. During an August 8, 2023 meeting of the Town select board, Police Chief Helena Rafferty ("Rafferty") referred to events "that made residents of our community feel disrespected, targeted, and intimidated." Id. ¶ 26. Rafferty stated that she "respect[s] everyone's right to voice those [different] viewpoints under the First Amendment" but "cannot accept . . . witnesses—these are residents who have not been charged with any crimes—being bullied in their homes, at their children's games, or on vacation, all under the guise of the First Amendment." Id.

On November 5, 2023, Plaintiffs participated in a protest across the street from D&E Pizza, a business in Canton owned by Town selectman, Chris Albert ("Albert"), who allegedly saw Read and O'Keefe the night of O'Keefe's death. Id. ¶ 29; see id. ¶¶ 12-13. As also alleged by Plaintiffs, Albert is related to individuals whom Read's supporters believe were involved in covering up O'Keefe's murder and framing Read. Id. ¶¶ 12–13, 17–19. At the time of the complaint, Albert was a potential witness in the case that was pending against Read. See id. ¶ 60. At the protest, Plaintiffs held signs with slogans including "Free Karen Re[a]d" and "Justice." Id. ¶ 30. Police Officers Robert Zepf, Michael Chin, and Anthony Pascarelli, and Sergeant Joseph Silvasy drove by the protest and "stopped and informed the protestors they were not permitted to protest there,

because if the protest could be seen by Chris Albert, they would deem it to be 'witness intimidation' and Plaintiffs would be arrested." Id. ¶¶ 31, 34.  These Defendants handed Plaintiffs a copy of Mass. Gen. L. c. 268, § 13A, a provision of the Commonwealth's witness intimidation statute.  D. 1 ¶ 35.  Plaintiffs allege that they declined to move forward with a November 12, 2023 protest in support of Read based upon Defendants' actions and threats of arrest.  D. 1 ¶ 40.  An investigation into Plaintiffs' conduct at the November 5, 2023 protest was pending as of the date of the pleading.  See id. ¶ 36.

Read's state criminal proceeding took place in April 2024 and ended in a mistrial.  D. 47 at 3.  Albert testified at that trial.  Id.  A retrial of Read is scheduled for January 27, 2025.  Id.  On November 22, 2023, three of the Plaintiffs were charged with violations of Mass. Gen. L. c. § 13A and § 13B based on their November 5, 2023 protest, and those charges were subsequently dismissed on August 2, 2024 for lack of probable cause.  Id. at 7-8.

## IV. Procedural History

On November 7, 2023, Plaintiffs instituted this action against Defendants alleging violations of their First Amendment rights of retaliation for protected speech (Count I) and seeking declaratory and injunctive prohibiting the enforcement of the Massachusetts witness intimidation statutes, Mass. Gen. L. c. 268 §§ 13A and 13B, as unconstitutional both facially and as applied to Plaintiffs (Count II).  D. 1.  The next day, Plaintiffs moved on an emergency basis for a temporary restraining order and preliminary injunction concerning a planned protest on Sunday, November 12, 2023.  D. 4.  On November 10, 2023, this Court denied the injunction, D. 13.  Plaintiffs appealed the denial of emergency relief to the First Circuit, D. 23, and during the pendency of that appeal, Defendants moved for judgment on the pleadings on April 19, 2024.  D. 40.  On September 19, 2024, the First Circuit denied the appeal as moot, reasoning that Plaintiffs did not show any likelihood of threatened prosecution because the Read trial had concluded and resulted in a

mistrial, Albert's testimony had already taken place, and any charges brought under the state witness intimidation statutes had been dismissed against the Plaintiffs in August 2024. D. 47 at 9-13. On December 10, 2024, the Court heard the parties on the pending motion and took the matter under advisement. D. 55.

## V.    Discussion

As an initial matter, the Court recognizes that the posture of this case has changed since the filing of the motions for judgment on the pleadings. The Court takes judicial notice that Albert, the object of Plaintiffs' protest, has now testified in the Read trial that began in April 2024 and the Read trial ended in a mistrial. See D. 47 at 3, 7-10. The state court has also dismissed the charges under §§ 13A, 13B against three of the Plaintiffs, charged after the Plaintiffs' pleading in this case, for lack of probable cause concerning any violation of the witness intimidation statutes from the November 5, 2023 protest. Id. at 9.

### A.    Constitutionality of the State Witness Intimidation Statute (Count II)

Defendants assert that Plaintiffs' claims concerning the enforcement of the state witness intimidation statutes fail on the pleadings because (1) the statutes are facially constitutional, (2) the statutes are constitutional as applied to Plaintiffs, and (3) the statutes are sufficiently clear. D. 41 at 4-8. The Court agrees.[3]

_____

[3] Defendants have not raised whether Count I could be dismissed on mootness grounds. As the First Circuit recognized, the "threatened enforcement [of the statutes' must be sufficiently specific:  the plaintiff must allege a live controversy about an actual or imminent application of [the challenged statute] sufficient to present the constitutional issues in clean-cut and concrete form." D. 47 at 12 (alternation in original) (internal quotation marks and citations omitted).  Here, the posture of the case is the same as before the First Circuit on the appeal of denial of injunctive relief (i.e., the charges against three of the Plaintiffs based upon the November 5, 2023 protest were dismissed and the referenced November 12, 2023 protest did not go forward and the Read trial, at which Albert testified, ended in a mistrial set to be retried next month), and "[a]llegations of a subjective chill are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm."  See id. at 12-13 (internal quotation marks omitted) (quoting Blum v. Holder, 744 F.3d 790, 796 (1st Cir. 2014)).  Nevertheless, neither party raised this issue in

*1.    The State Witness Intimidation Statues are Facially Constitutional*

Mass. Gen. L. c. 268 § 13A, in relevant part, provides that anyone "with the intent of interfering with, obstructing, or impeding the administration of justice, or with the intent of influencing any . . . witness, . . . in the discharge of his duty, pickets or parades . . . in or near a building or residence occupied or used by such . . . witness" shall be subject to criminal penalty. Mass. Gen. L. c. 268 § 13A.

Mass. Gen. L. c. 268 § 13B, in relevant part, also provides criminal penalty for "[w]hoever, willfully, either directly or indirectly . . . misleads, intimidates or harasses another person who is a: (A) witness or potential witness . . . with the intent to or with reckless disregard for the fact that it may; (1) impede, obstruct, delay, prevent or otherwise interfere with: . . . a trial or other criminal proceeding of any type . . . or (2) punish, harm or otherwise retaliate against any such person described in this section for such person or such person's family member's participation in any [such] proceedings." Mass. Gen. L. c. 268 § 13B(b).

As the Court previously held, and the parties agree, these statutory provisions are content-based and subject to strict scrutiny. <u>See</u> D. 13 at 8; D. 41 at 5-6; D. 44 at 8. As such, the statutes are upheld as constitutional so long as the state has a compelling interest and the statutes are narrowly tailored to promoting that interest. <u>Reed v. Town of Gilbert</u>, 576 U.S. 155, 163 (2015) (recognizing that content-based laws are "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests").

The Court previously concluded that the statutes are facially constitutional because §§ 13A and 13B serve the compelling state interest in protecting the orderly administration of justice. D.

---

their briefing or at oral argument on the pending motion, and, therefore, the Court reaches the merits of Count I.

13 at 9-10.  The Supreme Court has recognized the government's interest in "protecting its judicial system from the pressures which picketing near a courthouse might create" and has permitted the government to "adopt safeguards necessary and appropriate to assure that the administration of justice at all stages is free from outside control and influence." Cox v. State of La., 379 U.S. 559, 562 (1965).  The compelling governmental interest in the orderly administration of justice is not limited to the courthouse itself.  See, e.g., Lafferty v. Jones, 246 A.3d 429, 452-53 (Conn. 2020) (reasoning that "speech that interferes with the administration of justice cannot be tolerated" and affirming sanctions against defendant for remarks made on radio broadcast which "created a hostile atmosphere that could discourage individuals from participating in the litigation").  Further, courts have "consistently emphasized the compelling State interest in protecting witnesses from intimidation, harassment, and threats of physical violence." Commonwealth v. Frazier, 90-P-268, 2021 WL 1561358, at *3 (Mass. App. Ct. April 21, 2021) (unpublished opinion) (citing cases). "The purpose of the statute, rather obviously, is to protect witnesses from being bullied or harried so that they do not become reluctant to testify or to give truthful evidence in investigations or judicial proceedings.  The larger purpose is to prevent interference with the administration of justice." Commonwealth v. McCreary, 45 Mass. App. Ct. 797, 799 (1998).  Although McCreary was addressing § 13B only, id., § 13A also reflects the same compelling state interest.

The Court, therefore, disagrees with Plaintiffs' assertion that the statutes are unconstitutional because they "criminalize words" and not particular conduct and that the government has no compelling interest in "a demonstrator encouraging a witness to testify truthfully." See D. 44 at 9.   Here, contrary to Plaintiffs' claims, § 13A applies to their conduct as it applies to anyone, "with the intent of interfering with, obstructing, or impeding the administration of justice, or with the intent of influencing any . . . witness, . . . in the discharge of

his duty, pickets or parades . . . in or near a building or residence occupied" by such witness. Mass. Gen. L. c. 268 § 13A. Similarly, § 13B applies to conduct of a person who "willfully, either directly or indirectly . . . misleads, intimidates or harasses another person" who is a witness or potential witness in a judicial proceeding "with the intent to or with reckless disregard for the fact that it may . . . impede, obstruct, delay, prevent or otherwise interfere with . . . . a trial or other criminal proceeding." Mass. Gen. L. c. 268 § 13B(b).

The Court also disagrees with Plaintiffs' assertion that the statutes are not narrowly tailored and are broader than necessary because they apply to all types of speech and have a broad geographical reach. See D. 44 at 10-12. Specifically, Plaintiffs challenge that § 13A is not narrowly tailored because it applies to "any building" where a witness may be found and contends that there are not ample alternative channels for communication. Id. at 10-11, 14. The statute, however, is limited as it requires a connection to a witness, for which in each proceeding there would be a limited number, and there is nothing in the statute that does not allow for Plaintiffs to protest elsewhere. D. 13 at 10.

Further, the statutes are facially neutral and Plaintiff cites no authority for the premise that a statute that criminalizes all types of speech and intimidation against a witness, and not just speech focused on perjurious testimony is unconstitutional. D. 44 at 11. As this Court previously recognized, the statute itself is narrowed by an intent requirement that aligns with the Defendants' compelling interest in protecting the administration of justice. See D. 13 at 9-10; Mass. Gen. L. c. 268 § 13A (prohibiting conduct "with the intent of interfering with, obstructing, or impeding the administration of justice, or with the intent of influencing any judge, juror, witness, or court officer"); id. § 13B (prohibiting conduct "with the intent to or with reckless disregard for the fact that it may . . . impede, obstruct, delay, prevent or otherwise interfere with . . . a trial or other

criminal proceeding of any type"); see March v. Mills, 867 F.3d 46, 67 (1st Cir. 2017) (reasoning that the "narrow tailoring requirement does not demand perfect tailoring" and concluding that the statute's noise provision was facially neutral and "the requisite disruptive intent" element narrowed the statute's scope). For all these reasons, the Court holds that Plaintiffs have not shown that the statutes are facially unconstitutional.

> ## 2.    *As-Applied First Amendment Challenge*

Even as applied to Plaintiffs, enforcement of the statutes is narrowly tailored to serve that compelling interest. An as applied challenge "requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right." Picard v. Magliano, 42 F.4th 89,101 (2nd Cir. 2022) (internal quotation marks and citation omitted); see McGuire v. Reilly, 386 F.3d 45, 61 (1st Cir. 2004) (explaining that, most commonly, "the as-applied challenge is then an attempt to 'specify' the law by freshly testing its constitutionality in one particular fact situation").

Here, although Plaintiffs claim that they were protesting at the "busiest intersection in Canton" and in a traditional public forum, D. 44 at 4, even as alleged, the pleadings indicate that Plaintiffs knew that they were protesting across the street from Albert's business because Plaintiffs believed that Albert would offer false testimony. See D. 1 at 2 (alleging that "[t]o protest against perceived perjury. . . Plaintiffs . . . gathered on Sunday, November 5, 2023 across the street from Chris Albert's business, D&E pizza"). There is nothing in the statute, or as applied to Plaintiffs, that would prohibit their gathering to do the same in other locations. Although Plaintiffs emphasize the public forum in which they chose to protest, "cases make clear, however, that even in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech" that satisfy strict scrutiny. Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989). The fact that, here, multiple participants took part in a protest outside of a witness's place

of work tends to increase, not decrease, the risk that the witness's testimony may be influenced. See, e.g., Cox, 379 U.S. at 562 (emphasizing need to shield fair trial from "influence or domination by either a hostile or friendly mob").  For all these reasons, the Court concludes that Plaintiffs have not shown that the statutes are unconstitutional as applied to Plaintiffs.

### 3.    State Witness Intimidation Statutes are not Void for Vagueness

Defendants contend that the state witness intimidation statutes are "sufficiently clear" to provide notice of the proscribed conduct.  D. 41 at 8.  Plaintiffs contend that the statutes are void for vagueness because they assert that the statutes do not proscribe what speech is deemed to violate the statute and, therefore, it permits law enforcement to "shut down" unfavorable ideas.  D. 44 at 15.  "A statute violates due process and is void for vagueness when individuals of normal intelligence must guess at the statute's meaning and may differ as to its application, thus denying them fair notice of the proscribed conduct."  Commonwealth v. McGhee, 472 Mass. 405, 414 (2015) (internal quotation marks and citation omitted).  A statute is not vague "if it requires a person to conform his conduct to an imprecise but comprehensible normative standard."  Id. (internal quotation marks and citation omitted).  Further, uncertainty as to whether certain "marginal offenses" are included within the scope of the statute does not render it unconstitutionally vague.  Id.  In examining whether a statute is vague, "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.  A court should examine the complainant's conduct before analyzing other hypothetical applications of the law."  Commonwealth. v. Cruz, No. 11-684, 2011 WL 3611392, at *3 (Mass. Super. Aug. 11, 2011) (quoting Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc. 455 U.S. 489, 494 n. 5 (1982)).

Here, the Court concludes that the statutes are not unconstitutionally void for vagueness. As discussed above, the statutes sufficiently make clear that an individual cannot engage in

conduct with the intent of influencing or intimidating a witness and impeding the administration of justice. Mass. Gen. L. c. 268 §§ 13A, 13B. Contrary to Plaintiffs' contention, it is not the simple act of holding up a sign that is prohibited, but engaging in conduct with the intent of directly or indirectly influencing a witness's testimony. Mass. Gen. L. c. 268 §§ 13A, 13B; Frese v. Formella, 53 F.4th 1, 12 (1st Cir. 2022) (concluding statute concerning prosecuting defamation was not vague because "we do [not] think a reasonable person has much difficulty in ascertaining whether speech subjects a living person to public hatred, contempt, or ridicule"); see Cruz, 2011 WL 3611392, at *4 (concluding that provision of § 13B that seeks to prohibit misleading an investigation was not unconstitutionally vague because the statute has an explicit intent requirement and, therefore, "the statute provides a sufficiently clear forewarning of what it proscribes and adequate guidelines for law enforcement purposes") (internal quotation marks and citation omitted); see also McGhee, 472 Mass. at 415 (reasoning that the statutory language was not vague because the language had commonly understood language and "provided fair notice" that "the very conduct in which [defendants] engaged was the kind of conduct that the [l]egislature intended to prohibit").

Accordingly, for all these reasons discussed above, the Court allows Defendants' motion for judgment on the pleadings as to Count II as to declaratory and injunctive relief.

**B.    First Amendment Retaliation Claim (Count I)**

*1.    First Amendment Retaliation Claim Against the Town*

Although "[a] municipality cannot be held liable under § 1983 on a *respondeat superior* theory," § 1983 does impose "liability on a government that, under color of some official policy, causes an employee to violate another's constitutional rights." Monell v. Dep't of Soc. Servs. of the City of N.Y., 436 U.S. 658, 691–92 (1978) (internal quotation marks and citation omitted). "[F]or a municipality to be held liable for civil rights violations under 42 U.S.C. § 1983, a plaintiff

must show that the municipality itself cause[d] the constitutional violation at issue." Hayes v. Town of Dalton, No. 21-cv-30055-KAR, 2022 WL 17177729, at *5 (D. Mass. Nov. 23, 2022) (alternation in original) (internal quotation marks and citation omitted). Accordingly, to prevail on a First Amendment retaliation claim against the Town, Plaintiffs must show that a municipal "policy" or "custom" is the "moving force [behind] the constitutional violation." City of Canton v. Harris, 489 U.S. 378, 389 (1989) (quoting Monell, 436 U.S. at 694); Hayes, 2022 WL 17177729, at *5. Plaintiffs must, therefore, allege "both the existence of a policy . . . and a causal link between that policy and the constitutional harm." Wood v. City of Haverhill, No. 23-cv-12377-JEK, 2024 WL 4189932, at *11 (D. Mass. Sept. 13, 2024) (quoting Santiago v. Fenton, 891 F.2d 373, 381 (1st Cir. 1989)). "A town's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983 in limited circumstances if the plaintiff shows deliberate indifference by the town." Cantrell v. Brunswick Maine Police, No. 23-cv-00283-NT, 2024 WL 1859800, at *11 (D. Me. Apr. 29, 2024) (internal quotation marks and citation omitted). To demonstrate deliberate indifference in such circumstance, "a plaintiff typically must show a 'pattern of similar constitutional violations by untrained employees.'" Id. (quoting Gray v. Cummings, 917 F.3d 1, 14 (1st Cir. 2019)).

Here, Plaintiffs have failed to allege the existence of an official unconstitutional custom or policy by the Town to deprive protesters of their First Amendment rights. See generally D. 1. Even as alleged, the only allegations in the complaint concerning any "policy" are statements that Chief Rafferty made on August 8, 2023 that what would not be "accepted" is "witnesses—these are residents who have not been charged with any crimes—being bullied in their homes, at their children's games, or on vacation, all under the guise of the First Amendment." D. 1 ¶ 26. Aside from this statement, there are no allegations that an official unconstitutional policy was adopted of

suppressing First Amendment speech. Plaintiffs cite the arrest and charging of another individual for multiple counts of intimidation (and conspiracy) in their complaint, D. 1 ¶ 27, but even considering that additional allegation does not indicate existence of an unconstitutional custom or policy by the Town. That is, there are no allegations that there has been a pattern of enforcement of an unconstitutional policy or custom as required to show deliberate indifference on behalf of the Town and impose liability under Monell. See Bixby v. Town of Rehoboth, No. 23-cv-10334-MPK, 2024 WL 4979147, at *9 (D. Mass. Dec. 4, 2024) (concluding that plaintiff had failed to allege a Monell claim against the Town because evidence of a single incident of a constitutional deprivation is insufficient to establish a municipal custom); cf. Cantrell, 2024 WL 1859800, at *11 (reasoning that even though plaintiff did not "expressly allege that the Town failed to train its police officers, his allegations support an inference that the pattern of similar constitutional violations is attributable to a lack of officer training"). For all these reasons, the Court grants Defendants' motion as to the Town on Count I.

### 2. First Amendment Retaliation Claim Against Rafferty

Plaintiffs' First Amendment retaliation claim against Rafferty, in both her personal and official capacity, fares no better. "The criteria for establishing supervisory liability are exceptionally stringent." Hayes, 2022 WL 17177729, at *8 (internal quotation marks and citation omitted). "[A] supervisor may not be held liable under section 1983 on the tort theory of respondeat superior, nor can a supervisor's section 1983 liability rest solely on his position of authority." Guadalupe-Báez v. Pesquera, 819 F.3d 509, 515 (1st Cir. 2016). Rather a claim for supervisory liability under Section 1983 "has two elements: first, the plaintiff must show that one of the supervisor's subordinates abridged the plaintiff's constitutional rights . . . [and] . . . [s]econd, the plaintiff must show that the supervisor's action or inaction was affirmatively linked to that behavior in the sense that it could be characterized as supervisory encouragement, condonation, or

acquiescence or gross negligence amounting to deliberate indifference." Id. at 514-515 (internal quotation marks and alterations omitted). Even assuming *arguendo* Plaintiffs have pleaded a plausible violation of their constitutional rights, a generous reading of Plaintiffs' complaint does not provide a plausible factual basis demonstrating the requisite linkage between Rafferty and the Police Officer Defendants' conduct at the protest. Although Plaintiffs point to the speech Rafferty made on August 8, 2023 as formulating a potential "policy" concerning protests that target witnesses in the Read trial, Plaintiffs allege in conclusory fashion that the Police Officer Defendants conduct was "under the supervision and at the direction of" Rafferty, D. 1 ¶¶ 32-33, and there are no facts alleged showing Rafferty's encouragement, condonation or acquiescence in the officers' conduct, or gross negligence that would amount to deliberate indifference. Hayes, 2022 WL 17177729, at *9 (concluding that police chief was entitled to judgment on the pleadings because Plaintiff had not pled any facts to show that the police chief was personally responsible for the actions or inactions that allegedly violated plaintiff's rights).[4] Accordingly, Rafferty is entitled to judgment on the pleadings as to Count I.

### 3.    First Amendment Retaliation Claim Against Police Officer Defendants

To prevail on a First Amendment retaliation claim against the individual Police Officer Defendants, Plaintiffs must show (1) "that [their] conduct was constitutionally protected" and (2) "proof of a causal connection between the allegedly protected conduct and the supposedly

---

[4] Although Plaintiffs also bring a claim against Rafferty in her individual capacity, Plaintiffs have not alleged any actions taken by Rafferty outside of her official capacity as police chief. See D. 1. ¶¶ 26, 32-33. As Rafferty was not at the protest and Plaintiffs have failed to plead any actions taken by Rafferty against Plaintiffs, Plaintiffs cannot sustain a § 1983 claim against Rafferty in her personal capacity. See Rogan v. Menino, 175 F.3d 75, 78 (1st Cir. 1999) (dismissing personal liability claims pursuant to § 1983 because "the complaint does not allege (or even insinuate) that either [defendants] directly participated in the actions that purportedly violated [plaintiff's] rights"); Welch v. Ciampa, 542 F.3d 927, 936 (1st Cir. 2008) (citing Rogan, 175 F.3d at 77 and recognizing that "the liability of persons sued in their individual capacities under section 1983 must be gauged in terms of their own actions").

retaliatory response." Najas Realty, LLC v. Seekonk Water Dist., 821 F.3d 134, 141 (1st Cir. 2016). Here, Plaintiffs assert constitutionally protected conduct in the form of "their November 5, 2023, constitutionally protected speech" and an adverse action in the form of Defendants "threatening Plaintiffs with arrest" as well as the later charges against three of the Plaintiffs that were subsequently dismissed. See D. 1 ¶ 42; D. 47 at 7-8.

The individually named Defendants claim that they are entitled to judgment on the pleadings on the basis of qualified immunity. D. 41 at 9-11. Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In determining whether a government official is entitled to qualified immunity, the Court must determine: (1) "whether the plaintiff's version of the facts makes out a violation of a protected right" and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Alston v. Town of Brookline, 997 F.3d 23, 50 (1st Cir. 2021). As to the second determination, "[t]he question is not whether the official actually abridged the plaintiff's constitutional rights but, rather, whether the official's conduct was unreasonable, given the state of the law when he acted." Alfano v. Lynch, 847 F.3d 71, 75 (1st Cir. 2017). For the right to be clearly established, the plaintiff must point to "controlling caselaw — or a consensus of persuasive caselaw — finding a violation in a factually *similar* situation that places his [constitutional] right beyond debate." Berge v. Sch. Comm. of Gloucester, 107 F.4th 33, 39 (1st Cir. 2024) (emphasis in original; internal quotation marks and citation omitted).

The Court focuses on whether the right Plaintiffs assert was clearly established at the time of their protest, i.e., the second, requisite prong of the analysis. Punsky v. City of Portland, 54

F.4th 62, 66 (1st Cir. 2022) (reasoning that the court can "resolve the qualified immunity challenge considering the prongs in any order"). This second prong has two aspects: "whether the legal contours of the right in question were sufficiently clear that a reasonable [officer] would have understood that what he was doing violated the right," and "whether in the particular factual context of the case, a reasonable [officer] would have understood that his conduct violated the right." Stamps v. Town of Framingham, 813 F.3d 27, 34 (1st Cir. 2016). "Qualified immunity exists to shield all defendants except those who are plainly incompetent or who knowingly violate the law." Punsky, 54 F.4th at 67 (internal quotation marks and citation omitted).

Here, reasonable officers could have concluded that Plaintiffs' actions fell squarely within § 13A and § 13B because the right that Plaintiffs assert here, to protest with the intent of influencing a witness's testimony in a judicial proceeding, would be violative of these statutes which have never been held to be unconstitutional.[5]  Although Plaintiffs claim that they have a "clearly established" right to petition the government, D. 1 ¶ 45, Plaintiffs were not engaging in a protest against Albert in his capacity as Town Selectmen, but against Albert as a private citizen who would be called as a witness in the Read case. See id. ¶ 29. At the time of Plaintiffs' protest,

---

[5] At oral argument, Plaintiffs relied upon Berge, 107 F.4th at 43, to suggest that the individual Defendants are not entitled to qualified immunity because they threatened Plaintiffs with enforcement of a statute for which charges were subsequently dismissed for lack of probable cause. In Berge, the First Circuit considered whether qualified immunity protected public officials who threatened a citizen-journalist with legal action under the wiretap statute if he did not remove a video that he had made and posted on Facebook, in violation of the plaintiff's First Amendment rights to publish information of public concern. Id. at 35-37, 41. After the incident, plaintiff was notified that the public officials would not take any legal action. Id. at 37. The First Circuit reasoned that qualified immunity was inapplicable because public officials "cannot—as they did here—threaten a person with legal action under an obviously inapt statute" because the wiretap act only bans "secret" recordings and plaintiff's actions were not secretive. Id. at 43. Unlike in Berge, where it was apparent that the wiretap statute was inapplicable, Defendants' actions were reasonable given that the officers were relying upon a statute that covered Plaintiff's conduct. D. 1 ¶ 29.

Plaintiffs' asserted right to protest with the intention of influencing a potential witness's testimony, was not a clearly established right as the Massachusetts witness intimidation statutes had not been held to be unconstitutional.[6]  See McCreary, 45 Mass. App. Ct. at 799 (affirming conviction under § 13B)); Frazier, 2021 WL 1561358, at *3 (citing cases rejecting constitutional challenges to statutes similar to the Massachusetts witness intimidation statue).  In the absence of a clearly established right, the Court concludes that the individual Defendants' actions were reasonable and fall within the protection of qualified immunity.  Accordingly, the Court allows Defendants' motion for judgment on the pleadings as to Count I against the individual Defendants.

## VI.    Conclusion

For all the aforementioned reasons, the Court ALLOWS Defendants' motion for judgment on the pleadings, D. 40.

**So Ordered.**

/s Denise J. Casper
United States District Judge

---

[6] Plaintiffs' reliance upon case law that picketing regulations have been declared unconstitutional as support that their right to protest was clearly established does not warrant a different conclusion, particularly where the Supreme Court has affirmed certain limitations on same.  See D. 44 at 18; see, e.g., Madsen v. Women's Health Ctr., Inc., 512 U.S. 753, 776 (1994) (affirming in part as to injunction regarding abortion clinics including noise restrictions and buffer zone around entrance and driveway as constitutional); cf. Carey v. Brown, 447 U.S. 455, 471 (1980) (concluding that statute which "discriminates among pickets based on the subject matter of their expression" was unconstitutional).